**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**DENISE DAVELLA,** *individually and on behalf of*
 *all others similarly situated*,

                                        **Plaintiff,**

    **vs.**                                                              **1:20-CV-726**
                                                                         **(MAD/ATB)**

**ELLIS HOSPITAL, INC.,** *doing business as*
*Ellis Medicine*,

                                        **Defendant.**

_____

**APPEARANCES:**                              **OF COUNSEL:**

**SCHNEIDER WALLACE COTTRELL**      **CAROLYN HUNT COTTRELL, ESQ.**
**KONECKY LLP**                               **ORI EDELSTEIN, ESQ.**
2000 Powell Street, Suite 1400
Emeryville, California 94608
Attorneys for Plaintiff

**SCHNEIDER WALLACE COTTRELL**      **JOHN J. NESTICO, ESQ.**
**KONECKY LLP**
6000 Fairview Road, Suite 1200
Charlotte, North Carolina 28210
Attorneys for Plaintiff

**BOND, SCHOENECK & KING, PLLC**      **MICHAEL D. BILLOK, ESQ.**
268 Broadway, Suite 104
Saratoga Springs, New York 12866
Attorneys for Defendant

**BOND, SCHOENECK & KING, PLLC**      **ERIC M. O'BRYAN, ESQ.**
22 Corporate Woods Boulevard, Suite 501
Albany, New York 12211
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

1

On April 29, 2022, Plaintiff Denise Davella ("Plaintiff Davella"), on behalf of herself and those similarly situated ("Plaintiffs"), filed a third amended complaint against Defendant Ellis Hospital, doing business as Ellis Medicine ("Defendant"), alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") for failure to pay full compensation. Dkt. No. 88 at ¶¶ 4-7, 52.[1] Defendant filed an answer on May 12, 2022. *See* Dkt. No. 91.

Presently before the Court are Plaintiffs' motion for conditional collective certification and Court-authorized notice to similarly situated individuals, *see* Dkt. No. 115, Defendant's response in opposition, *see* Dkt. No. 116, and Plaintiffs' reply. *See* Dkt. No. 117.

## II. BACKGROUND

Defendant has four medical centers in its system: (1) Ellis Hospital; (2) McClellan Street Health Center; (3) Bellevue Woman's Center; and (4) Medical Center of Clifton Park. *See* Dkt. No. 88 at ¶ 15. Plaintiffs,[2] patient care workers employed or formerly employed by Defendant, bring this case in response to Defendant's timekeeping and compensation policies. *See id.* at ¶ 48.

Relevant to the present motion, in the amended complaint, Plaintiffs bring claims under the FLSA for failure to compensate similarly situated employees for work performed during unpaid meal periods and failure to pay overtime compensation for work performed while off-the-clock. *See id.* at ¶¶ 74-84. Specifically, Plaintiffs allege that Defendant deducts a 30-minute meal

---

[1] Plaintiff filed the initial complaint on June 30, 2020. *See* Dkt. No. 1. Plaintiff then filed an amended complaint in May 2021, Dkt. No. 25, and Defendant answered. Dkt. No. 36. Plaintiff later requested to file an amended complaint and subsequently withdrew such request. *See* Dkt. Nos. 50, 57. After Defendant's filing of a motion to dismiss, the Court dismissed one claim for declaratory relief. *See* Dkt. Nos. 28, 33.

[2] The opt-in Plaintiffs do not include Lorraine Pizzo and Kathy Rumney, who previously opted-in, but have since withdrawn. *See* Dkt. Nos. 45, 100. Currently, the majority of the opt-in Plaintiffs are registered nurses ("RN").

period from shifts in its payment system even when employees stay on duty because of patient or hospital needs. *See id.* at ¶ 4. Additionally, Defendant utilizes a rounding policy, where employees arrive early to their shifts but cannot clock in until a few minutes before their shift starts and are instructed to clock out within a few minutes of when it ends, even when work-related activities are expected to be conducted before or after, respectively. *See id.* This policy "result[s] in patient care workers performing compensable work prior to clocking in for their shift and after clocking out for their shifts" without being compensated for said work. *Id.*; *see id.* at ¶¶ 3, 30-35, 53, 55, 77-78.

Plaintiff Davella worked as a registered nurse for Defendant for sixteen years and alleges that she "work[ed] four days a week for ten to eleven hours each shift – approximately 40 to 44 hours each week." Dkt. No. 88 at ¶ 28. Plaintiff Davella testified[3] at a deposition that Defendant has failed to pay her for work performed during meal periods, when she was not able to take a full or partial break. *See* Dkt. No. 115-9 at 19-24, 32, 108. Plaintiff Davella further testified that she and others were not paid for a required pre-shift health screening, *see id.* at 35-36, and worked after clocking out due to staffing and patient needs, and were not compensated for such work. *See id.* at 214-15.

Opt-in Plaintiff Pamela Karl is a registered nurse and worked for Defendant from 1997 to 2015 and from October 2017 to the present. *See* Dkt. No. 46-1 at 1; Dkt. No. 115-13 at 25. Plaintiff Karl testified that she has been unable to take lunch breaks and went unpaid for said work. *See* Dkt. No. 115-13 at 68. In a specific instance, she recorded that she did not take a lunch break in Defendant's swiping system, and a manager later "omitted" the extra work from her

---

[3] The term "testified" in this Memorandum-Decision and Order refers to deposition testimonies taken prior to the filing of the present motions.

records before submitting the records to payroll, preventing Plaintiff Karl from being fully compensated. *See id.* at 57.

Opt-in Plaintiff Margaret Newman worked as a registered nurse for Defendant from around October 2016 until July 2018, *see* Dkt. No. 53-1 at 2, and alleges that Plaintiffs were not able to take meal breaks and were not paid for that work. *See* Dkt. No. 115-12 at 30.  Plaintiff Newman additionally testified that Plaintiffs were encouraged to clock out within seven minutes of their scheduled end-of-day but were often asked to perform work after clocking out and were not paid for such off-the-clock work. *See id.* at 34-39.

Opt-in Plaintiff Nancy Franco has worked as a registered nurse for Defendant from October 14, 2019, through the present. *See* Dkt. No. 67-1 at 2.  Plaintiff Franco is now a charge nurse and testified that (1) it is difficult to coordinate full meal breaks with coverage for her patient care employees, *see* Dkt. No. 115-11 at 27; (2) that the majority of the time she does not have a full meal break, *see id.* at 26; and (3) that she has heard complaints about inaccurate times being submitted by presumably a supervisor or manager into payroll, preventing employees from receiving earned overtime. *See id.* at 33.

Opt-in Plaintiff Shannon Fitzgerald has worked as registered nurse for Defendant from May 1996 through the present. *See* Dkt. No. 90-1 at 2.  Plaintiff Fitzgerald testified that (1) "there has been significant talk in the past [that employees] don't get paid for the meal breaks [they] don't get," *see* Dkt. No. 115-15 at 43, (2) named Betsy Welch and Plaintiff Meluch as two nurses who have complained of such practices, *see id.* at 44; and (3) discussed "a culture" of Defendant not honoring employees' requests for payment for required work during meal breaks. *See id.* at 45.

Opt-in Plaintiff Daniel O'Donnell worked as a registered nurse for Defendant from May 2009 until January 2020. *See* Dkt. No. 82-1 at 2. Opt-in Plaintiff Kristin Meluch worked as a registered nurse for Defendant from 2002 until 2022. *See* Dkt. No. 87-1 at 2. Opt-in Plaintiff Virginia Wrighter-Savaria has worked as a clinical coordinator for Defendant since 2016. *See* Dkt. No. 96-1 at 2. Opt-in Plaintiff Kandis Bessette worked as a registered nurse for Defendant from July 2020 until May 2022. *See* Dkt. No. 103-1 at 2. Additionally, "[f]ormer Opt-In Kathleen Rumney worked for Ellis as an RN in the endoscopy center in 2017, 2018, and 2019; and since 2019, she's worked in Ellis's PACU/day surgery unit." Dkt. No. 115-1 at 9 (citing Dkt. No. 115-10 at 82).[4]

Plaintiffs bring this action on behalf of Defendant's non-exempt employees who have provided patient care from six years before the complaint was filed until the action is resolved. *See* Dkt. No. 88 at ¶ 1. Plaintiffs now seek to conditionally certify a collective of

> [a]ll hourly, non-exempt patient care workers (including Registered Nurses, Licensed Vocational Nurses, Patient Care Technicians, and other workers with similar direct patient care responsibilities) employed by Defendant Ellis Hospital Inc., d/b/a Ellis Medicine at any time from June 30, 2017, through resolution of this action (the "Putative Collective Members" or "Patient Care Workers").

Dkt. No. 115-1 at 7.

### III. DISCUSSION

**A.     Conditional Certification Under the FLSA**

The FLSA allows for collective litigation similar to that of a Federal Rule of Civil Procedure 23 class action insofar as it permits "[a]n action ... against any employer ... by any one or more employees for and on behalf of himself or themselves and other employees similarly

---

[4] Ms. Rumney did not testify that Defendant failed to adequately compensate her. *See* Dkt. No. 115-10.

situated." 29 U.S.C. § 216(b). "[T]he prevailing view in the Second Circuit, and other Circuits, is that actions such as those pursuant to section 216(b) of the FLSA are not subject to Rule 23 requirements and principles." *Vogel v. Am. Kiosk Mgmt.*, 317 F. Supp. 2d 122, 127 (D. Conn. 2005). "In contrast to Rule 23, certification of a collective action 'requires no showing of numerosity, typicality, commonality, or representativeness.'" *Fa Ting Wang v. Empire State Auto Corp.*, No. 14-CV-1491, 2015 WL 4603117, *5 (E.D.N.Y. July 29, 2015) (quoting *Enriquez v. Cherry Hill Mkt. Corp.*, No. 10-CV-5616, 2012 WL 440691, *1 (E.D.N.Y. Feb. 10, 2012)). Potential plaintiffs must also affirmatively "opt-in" to the collective action. *See id.*

The Second Circuit has adopted a two-stage method of certification in opt-in collective actions under the FLSA. *See Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010). The first stage requires the court to make an initial determination whether to send a notice to "potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a[n] FLSA violation has occurred." *Id.* at 555 (collecting cases). To achieve conditional certification at this first stage, plaintiffs can satisfy their burden by making only a "'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Id.* (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261, (S.D.N.Y. 1997)). "'Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members.'" *Griffin v. Aldi, Inc.*, No. 5:16-CV-354, 2017 WL 1397320, *2 (N.D.N.Y. Feb. 22, 2017) (quoting *Amador v. Morgan Stanley & Co. LLC*, No. 11-CV-4326, 2013 WL 494020, *2 (S.D.N.Y. Feb. 7, 2013)). Courts have certified collective actions based on only one individual's accusations. *See, e.g., Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 452-53 (E.D.N.Y. 2014) (citing cases in which conditional certification was granted on the basis of one employee's claims). Further, courts

regularly rely on ... hearsay statements in determining the propriety of sending notice" in FLSA conditional certification cases. *See Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 563 (S.D.N.Y. 2012).

The Second Circuit has repeatedly emphasized that the "'modest factual showing' cannot be satisfied simply by 'unsupported assertions,' ... but it should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Myers*, 624 F.3d at 555 (emphasis in original) (citing *Sbarro*, 982 F. Supp. at 261; *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991)); *see also Griffin*, 2017 WL 1397320, at *3; *Amador*, 2013 WL 494020, at *3. This is because a court's role at this stage is procedural; a court is not yet resolving factual disputes or deciding the substance of the merits. *See Griffin*, 2017 WL 1397320, at *3. In fact, "a court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007). Further, courts must "draw all inferences in favor of the [p]laintiff," in considering a motion for conditional certification. *See Mendoza v. Ashiya Sushi 5, Inc.*, No. 12-CV-8629, 2013 WL 5211839, *4-*5 (S.D.N.Y. Sept. 16, 2013) (quoting *Jenkins v. TJX Cos. Inc.*, 853 F. Supp. 2d 317, 322 (E.D.N.Y. 2012)).

Once a court is satisfied that the modest factual showing is met, "it conditionally certifies the class and orders notice to putative class members, who are given the opportunity to opt in." *Cunningham v. Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010) (citing *Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F. Supp. 2d 334, 336 (W.D.N.Y. 2008)). Only at the second stage of the certification process will the district court, "on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in

are in fact 'similarly situated' to the named plaintiffs.  The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Griffin*, 2017 WL 1397320, at *3 (quoting *Myers*, 624 F.3d at 555); *Cunningham*, 754 F. Supp. 2d at 644 ("This second stage-inquiry utilizes a more stringent factual determination as to whether the members of the class are, in fact, similarly situated") (internal quotation and citation omitted). This is because, at that time, the court would be able to "examine whether the actual plaintiffs brought into the case are similarly situated." *Id.* (quoting *Gortat v. Capala Bros.*, No. 07-CV-3629, 2010 WL 1423018, *10 (E.D.N.Y. Apr. 8, 2010) (emphasis in original)).

Defendant argues that as some pre-motion discovery has occurred, the Court should use a one step "modest-plus" evidentiary standard as to whether the individuals are similarly situated. In support, Defendant refers to *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021), a Fifth Circuit case which does not bind this Court.  Defendant additionally cites *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 482 (S.D.N.Y. 2016), finding that where discovery for conditional certification has taken place, including depositions, that court would apply a modest-plus standard in determining that the "additional evidence obtained in discovery should show 'that it is more likely that a group of similarly situated individuals may be uncovered by soliciting opt-in plaintiffs'—in other words, that Plaintiffs have, through discovery, 'advanced the ball down the field.'" *Korenblum*, 195 F. Supp. 3d at 482.  Other cases cited by Defendant similarly reiterate that this standard still does not involve "weighing the merits of the underlying claims." *Watterson v. RUI Mgmt. Servs., Inc.*, No. 20-CV-1783, 2022 WL 3867755, *6 (E.D.N.Y. Aug. 30, 2022); *see also Jibowu v. Target Corp.*, 492 F. Supp. 3d 87, 119 (E.D.N.Y. 2020) ("where discovery has been completed as to the step one inquiry, a court may adopt a 'modest 'plus' standard'").  Plaintiff argues that "[b]y and large ... district courts in this Circuit

have expressly declined to apply any increased scrutiny until discovery closes in full." Dkt. No. 117 at 9 (quoting *Korenblum*, 195 F. Supp. 3d at 481).

The Court finds it unnecessary to apply the modest-plus standard, as the Second Circuit has not endorsed such a standard.  However, even if the Court utilized the modest-plus standard, Plaintiffs meet their burden as the allegations, testimonies, and evidence discussed *infra* support their claims that Defendant engaged in a practice of not compensating employees for off-the-clock work and for work during meal breaks.  *See Valdez v. MichPat & Fam, LLC*, No. 20-CV-2570, 2022 WL 950450, *7 (E.D.N.Y. Mar. 30, 2022); *Korenblum*, 195 F. Supp. 3d at 480 (noting that even in utilizing the modest plus standard, courts do "'not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations'") (quoting *In re Penthouse Exec. Club Comp. Litig.*, No. 10-CV-1145, 2010 WL 4340255, *2 (S.D.N.Y. Oct. 27, 2010)); *Villalta v. 101-11 86 Ave. Corp.*, No. 20-CV-249, 2022 WL 462408, *6 (E.D.N.Y. Feb. 15, 2022); *Wang v. Kirin Transp. Inc.*, No. 20-CV-5410, 2022 WL 79155, *10 (E.D.N.Y. Jan. 7, 2022).

Plaintiffs now move for conditional certification of their FLSA collective action and for approval of their notice and notice plan.  *See* Dkt. No. 115.  Plaintiffs have not asked for any certification or class recognition with respect to their NYLL claims at this time.  Defendant raises several arguments as to why Plaintiffs' motion should be denied.  *See* Dkt. No. 116.  The Court will address each in turn.

### 1. *Plausibility of Claims*

Defendant argues that Plaintiffs' motion should be denied as none of the opt-in Plaintiffs have plausible FLSA overtime claims.  *See* Dkt. No. 116 at 13.  Plaintiffs argue that there are factual disputes as to whether Plaintiffs were paid for pre-shift work and work during meals, and

that Plaintiffs have plausibly alleged an FLSA claim. *See* Dkt. No. 117 at 7-8. "At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Lynch*, 491 F. Supp. 2d at 368; *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 662, 664 (S.D.N.Y. 2013); *see also Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 322 (S.D.N.Y. 2007). The question at this stage is whether the collective individuals are similarly situated, *see Myers*, 624 F.3d at 554-55, rather than the merits of the claims. Accordingly, the Court rejects Defendant's argument as premature.

### 2. Common Policy or Plan

Defendant argues that Plaintiffs' motion should be denied as Defendant did not have a common policy or plan to fail to pay employees for off-the-clock and meal break work. *See* Dkt. No. 116 at 18. Plaintiffs argue that they have sufficiently pled that "patient care workers are victims of a common policy requiring [them] and other employees to work through meal periods without pay," and denying pay for other "off-the-clock" work. Dkt. No. 117 at 8; *see* Dkt. No. 115-1 at 17.

At this stage, even minimal information, such as a pleading or affidavit, is sufficient to allege a common policy affecting similarly situated employees. *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 66 (E.D.N.Y. 2016) (quoting *Hernandez v. NGM Mgmt. Grp. LLC*, No. 12-CV-7795, 2013 WL 5303766, *3 (S.D.N.Y. Sept. 20, 2013)) ("[C]ourts have routinely found that the allegations in the pleadings and the 'personal observations of one plaintiff's affidavit' are 'sufficient to make the modest factual showing necessary to conditionally certify [a] class'"); *see also Doucoure v. Matlyn Food, Inc.*, 554 F. Supp. 2d 369, 373 (E.D.N.Y. 2008) (granting preliminary certification where a plaintiff solely offered his allegations as evidence in support). Conditional certification may also be granted based on not only Plaintiffs' "observations, but on

10

statements made by other potential opt-in plaintiffs, who allegedly told [the plaintiff] ..." about FLSA violations.  *See Jeong Woo Kim v. 511 E. 5th Street, LLC*, 985 F. Supp. 2d 439, 448-49 (S.D.N.Y. 2013).

Plaintiffs allege that Defendant created a practice of failing to fully compensate staff for "off-the-clock" work through (1) its requirements that staff clock in no more than seven minutes before the start of their shift and requiring immediately clocking out, *see* Dkt. No. 115-14 at 56, 60-61; Dkt. No. 115-6 at 73; Dkt. No. 115-11 at 42; Dkt. No. 115-16 at 3; Dkt. No. 115-9 at 213-216, and (2) its use of a rounding policy.  *See* Dkt. No. 115-16 at 35; Dkt. No. 115-9 at 73-74, 149; Dkt. No. 115-14 at 55-56.  Specifically, employees were encouraged to arrive early, *see* Dkt. No. 115-9 at 36, including for Defendant's required health screening to be conducted upon arrival to the facility but prior to clocking in, and employees were not paid for this pre-clock-in time. *See* Dkt. No. 115-3 at 62; Dkt. No. 115-6 at 80-81; Dkt. No. 115-9 at 35-36.  Similarly, Plaintiffs testified that patient care workers were encouraged to clock out at the scheduled end of their shift but still requested to do work after clocking out and were not paid for that off-the-clock work. *See* Dkt. No. 115-15 at 52; Dkt. No. 115-2 at 34-35, 38; Dkt. No. 115-12 at 40-42, 51.  Per Defendant's handbook, all nonexempt employees are owed overtime when they work more than forty hours in a work week.  *See* Dkt. No. 115-17 at 3.  Though employees were supposed to seek prior authorization for overtime work, often due to known staffing demands or ethics requirements, there was not enough time to get authorization prior to patient needs demanding Plaintiffs work off-the-clock.[5]  *See* Dkt. No. 115-9 at 214-16.  Because of limited staffing,

---

[5] Employees who consistently reported working beyond their shift due to staffing and patient demands and requested payment were "subject to progressive discipline," Dkt. No. 115-6 at 64-69; *see* Dkt. No. 115-14 at 62-63, even when it was necessary to complete work in accordance with Defendant's standards, serve ethical obligations, or assist patients.  *See* Dkt. No. 115-1 at 12; Dkt. No. 115-6 at 47; Dkt. No. 115-16 at 4.

supervisors were aware that Plaintiffs often would start working before their shift but discouraged them from clocking in more than seven minutes before the official start of their shift.  *See* Dkt. No. 115-12 at 68, 73-74, 99.  Management or supervisors were aware on at least several occasions that due to patient and staffing requirements, employees had to work after clocking out and were not paid for such work.  *See* Dkt. No. 115-12 at 40-44, 53-54, 68-69.  Supervisors would approve incorrect hours in the compensation system, *see* Dkt. No. 115-16 at 4, and employees "were strongly discouraged from adjusting the timecards" to accurately reflect pre-shift or post-shift work.  Dkt. No. 115-9 at 73-74.  Plaintiffs testified that other nurses also worked more than forty hours.  *See* Dkt. No. 115-15 at 40; Dkt. No. 115-13 at 32; Dkt. No. 115-12 at 28.  Proffered evidence, including deposition testimonies, support a common policy and practice of Defendant failing to pay Plaintiffs for pre-shift and post-shift work.  *See* Dkt. No. 115-9 at 35-37, 186-87, 191, 196; Dkt. No. 115-6 at 80-81 (discussing pre-work required health screening).  Based on these allegations, testimonies, and evidence, Plaintiffs made a sufficient factual showing that they were subject to the same alleged unlawful policy or practice and have advanced their allegations enough to meet the modest plus burden.

The deposition testimonies support allegations of a common policy or practice of requiring work during mealtimes, and a failure to pay for such work because of meal deduction policies.  *See* Dkt. No. 115-15 at 43-45; Dkt. No. 115-13 at 48; Dkt. No. 115-12 at 30, 60; Dkt. No. 115-11 at 46; Dkt. No. 115-9 at 211-12, 76.  An automatic meal deduction policy, even when staffing demands require work during meal breaks, has been found to be a policy worthy of conditional certification based on a modest factual showing.  *See Gordon v. Kaleida Health*, No. 08-CV-378S, 2009 WL 3334784, *5 (W.D.N.Y. Oct. 14, 2009).  Plaintiffs testified that Defendant automatically deducted meal breaks even when individuals were not able to take such

breaks because of the automatic deductions for a meal break through Defendant's payment system.  *See* Dkt. No. 115-15 at 47, 49-50; Dkt. No. 115-13 at 37, 39-40; Dkt. No. 115-12 at 30. Plaintiffs were often unable to take full meal breaks because of limited staffing.  *See* Dkt. No. 115-13 at 46-47; Dkt. No. 115-11 at 26-27; Dkt. No. 115-5 at 45; Dkt. No. 115-12 at 29-30; Dkt. No. 115-9 at 68.  When Plaintiffs were required to work after their break had started, they were discouraged by Defendant's agents to clock back in.  *See* Dkt. No. 115-12 at 53, 61.  Similarly, Plaintiffs were encouraged not to adjust their timecards to accurately reflect that they did not receive a full lunch break.  *See* Dkt. No. 115-9 at 77-80.  Employees regularly complained about not receiving full meal breaks.  *See* Dkt. No. 115-15 at 41.  Deponents testified that management, physicians, and supervisors were often aware of employees not being able to take lunch, and employees would not be paid for that time.  *See* Dkt. No. 115-13 at 90-91; Dkt. No. 115-12 at 59-62.  Based on these allegations, testimonies, and evidence, Plaintiffs made a factual showing that they were subject to the same alleged unlawful policy or practice of failure to receive compensation for work during meal breaks and have advanced their allegations enough to meet the modest plus burden.

Generally, Plaintiffs testified that they are "[u]niformly subject to Ellis's administrative policies and the individual departments do not have authority to modify these policies in a significant way," Dkt. No. 115-1 at 17, which further supports Plaintiffs being similarly situated to one another.  Every employee attends a new hire orientation, *see* Dkt. No. 115-4 at 34; Dkt. No. 115-5 at 67, and is trained in Defendant's company-wide standards, policies, and procedures. *See* Dkt. No. 115-7 at 13; Dkt. No. 115-14 at 32.  Plaintiffs are each subject to Defendant's break policies, ethical obligations, rounding policy, disciplinary policy, and meal break policy.  *See* Dkt. No. 115-21; Dkt. No. 115-6 at 50, 64, 74, 85-86; Dkt. No. 115-5 at 68, 70, 81, 105; Dkt. No. 115-

4 at 40; Dkt. No. 115-14 at 38-39, 43, 49.  Supervisors or managers review the API system prior to timesheets going to payroll for payment.  *See* Dkt. No. 115-5 at 79.  Plaintiffs have made a "modest factual showing" that supervisors were aware of unpaid work, would approve the reported work in the compensation systems, and employees would not be compensated for all of their work hours.  *See* Dkt. No. 115-15 at 55-56; Dkt. No. 115-13 at 49-51, 56-57; Dkt. No. 115-12 at 40-42, 61, 63-65, 82.

Again, Defendant argues that there is insufficient evidence of a plan or policy and asks the Court to weight the merits of the claims.  *See* Dkt. No. 116 at 18-20.  However, the question at this stage of conditional certification is whether Plaintiffs made a factual showing that the class is subject to the same alleged unlawful policy.  Conditional certification has been appropriate in cases where insistence to clock in seven minutes or less ahead of work to ensure employees are ready to begin work duties without employers compensating paying for such time, *see Watterson v. RUI Mgmt. Servs., Inc.*, No. 20-CV-1783, 2022 WL 3867755, *7 (E.D.N.Y. Aug. 30, 2022), and for failure to pay for work during automatically deducted meal breaks.  *See Gordon*, 2009 WL 3334784, at *5.  Here, Plaintiffs' evidence supporting allegations of alleged unlawful policies, including Defendant not compensating Plaintiffs for required COVID screenings prior to clocking in, that would apply to all class members is sufficient to demonstrate Plaintiffs are similarly situated for purposes of conditional certification.

### 3. Narrowing the Collective

Plaintiffs seek certification as to

> [a]ll current and former hourly, non-exempt patient care workers (including Registered Nurses, Licensed Vocational Nurses, Patient Care Technicians, and other workers with similar direct patient care responsibilities) employed by Defendant Ellis Hospital Inc. d/b/a

> Ellis Medicine at any time from June 30, 2017, through resolution
> of this action ("Ellis Patient Care Workers").

Dkt. No. 115 at 5; Dkt. No. 115-1 at 7.[6]  Defendant argues that should the Court conditionally

certify the action, that the collective should be narrowed, limiting the scope of the collective by

job titles and Defendant's locations.  *See* Dkt. No. 116 at 24-27.

Defendant seeks to remove patient care technicians ("PCT") from the collective as they

are not nurses or similar to nurses.  Dkt. No. 116 at 25.  Defendant argues that PCTs

> are not licensed, they work under the supervision and guidance of
> nurses, who delegate tasks to them.  PCTs do not supervise care or
> have responsibility for patients; that responsibility falls to the
> nurses.  Given that Plaintiffs have not presented any evidence that
> would show that any specific PCT, or any PCTs generally, have
> worked overtime for which they were not paid, or are subject to any
> policy or plan to work overtime for which they were not paid …

*Id.*  While Plaintiff Davella attested that PCTs have different job requirements than nurses, *see*

Dkt. No. 115-9 at 129, she specified that they have certifications and work on technological

equipment for patients, *see id.* at 127, but do not administer medications.  *See id.* at 129.

Christina Curcio, a nursing director, testified that PCTs are also subject to the unpaid meal break

automatic deduction policy.  *See* Dkt. No. 115-5 at 89.  Defendant's own definition of patient care

employees includes licensed and unlicensed positions.  *See* Dkt. No. 115-7 at 2.

"'[P]arties may be similarly situated, despite not occupying the same positions or

performing the same job functions and in the same locations, provided that they are subject to a

common unlawful policy or practice.'"  *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 390

(E.D.N.Y. 2010) (quoting *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200, 207

---

[6] Plaintiff argues that should the Court need to narrow the collective, it should be narrowed to eight-hour shift patient care workers.  *See* Dkt. No.117 at 12-13.  The Court finds it unnecessary to narrow the collective in that way.

(N.D.N.Y.2009)).  As non-exempt employees, both PCTs and nurses work in a variety of departments, *see* Dkt. No. 115-4 at 52, 29; Dkt. No. 115-3 at 18; Dkt. No. 115-5 at 33, 40, 43, follow Defendant's handbook, *see* Dkt. No. 115-5 at 81, and use the API system for attendance and regulations regarding normal meal and rest period, including the specification that "employees are not required to log out for normal meal or rest periods … [and] Employees are expected back to work within the established meal period and fifteen-minute rest period." Dkt. No. 115-16 at 3; *see also* Dkt. No. 115-5 at 89 (mentioning that the PCTs are also subject to the unpaid meal period deduction).  There is evidence of PCTs as non-exempt employees being subject to the same automatic meal deduction policy.  *See* Dkt. No. 115-5 at 89.  Accordingly, the Court declines to remove PCTs from the collective definition.

Defendant next seeks to remove "licensed vocational nurses" ("LVN") from the collective, as Defendant's organization does not have LVNs.  *See* Dkt. No. 116 at 6, 25.  Additionally, Defendant argues that "[t]o the extent Plaintiffs were referring to Licensed Practical Nurses ("LPNs"), the Nott Street campus does not have LPNs." *Id.* at 25.  Plaintiffs do not address this argument.  *See* Dkt. No. 117.  Where jobs "appear to involve markedly … different overtime policies, and different compensation schemes ... there is no basis for concluding that these two groups were subject to the same policy or that they share any sort of factual nexus." *Colon v. Major Perry Street Corp.*, No. 12-CV-3788, 2013 WL 3328223, *7 (S.D.N.Y. July 2, 2013).  However, "factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification."  *Lynch*, 491 F. Supp. 2d at 369 (citations omitted).  Courts regularly grant certification to broad classes of employees across locations and have done so in prior hospital cases.  *See Summa*, 715 F. Supp. 2d at 390-91; *Colozzi*, 595 F. Supp. 2d at 207.

16

The pre-certification depositions provided evidence that at least one of Defendant's departments "have LPNs who function as surgical technicians," Dkt. No. 115-6 at 25, and Defendant has employed LPNs in the last five years. *See* Dkt. No. 115-5 at 59. Accordingly, based on the company-wide policies and the deposition testimonies, Plaintiffs have made the necessary factual showing that non-exempt LPNs would be subject to the same practices based on the management structure and overarching overtime policies that non-exempt nurses are subject to. As Plaintiffs have not made any factual showing that there are LVNs at Defendant's locations, the Court finds it proper to certify the matter at this initial stage as a collective action involving, as putative plaintiffs, past and present nonexempt patient care employees, including though not limited to nurses, LPNs and PCTs, but not including LVNs. *See Colozzi*, 595 F. Supp. 2d at 209 ("[T]he court retains the discretion to reformulate the proposed definition given by the plaintiffs of the potential opt-in class").

Defendant next argues that the Court should limit the collective to the Nott Street campus. *See* Dkt. No. 116 at 24-26. Plaintiff did not respond to that argument. *See* Dkt. No. 117. While courts may decline to conditionally certify a collective across all locations when plaintiffs fail to allege facts supporting an inference of common policy across the locations, *Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 458 (E.D.N.Y. 2014) (citing *Trinidad*, 962 F. Supp. 2d at 557-60); *Foster v. Food Emporium*, No. 99-CV-3860, 2000 WL 1737858, *2 (S.D.N.Y. Apr. 26, 2000)), courts may grant conditional certification of a collective including employees at other locations because "evidentiary submissions ... strongly suggest[ed] uniformity in the management and operation of [employees] across all four [defendant] locations." *Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 563 (S.D.N.Y. 2015); *see also Colozzi*, 595 F. Supp. 2d at 207 ("[U]nder section 216(b) parties may be similarly situated, despite not occupying the same positions or

17

performing the same job functions and in the same locations, provided that they are subject to a common unlawful policy or practice").  Here, there is factual evidence that suggests uniformity of management and policies across the locations.  Every new hire is subject to the same orientation, same handbook, same overarching HR and administration, same policies, and same API system. *See generally* Dkt. No. 115-4.  Non-exempt patient care workers are present at Defendant's various locations.  *See id.* at 16, 21.  As previously discussed, no individual departments have discretion to change the company-wide policies affecting non-exempt employees, including ethics requirements, and automatic lunch break deduction, that all new hires are made aware of.  *See* Dkt. No. 115-14 at 42-43.  Defendant's Hospital Plan for Patient Care Services provides a list of various centers and units that provide direct patient care, which includes some programs at other Defendant locations besides the Nott Street location.  *See* Dkt. No. 115-7 at 3-4.  While Plaintiffs did not present direct evidence as to deductions or off-the-clock work at other locations, they did suggest uniformity among management, operation, ethical requirements, and patient needs. Accordingly, the Court declines to limit the collective to Defendant's Nott Street campus.

**B.**     **Court-Authorized Notice**

Plaintiff requests notice via mail, email, text, and posting at Defendant's locations.  *See* Dkt. No. 115-1 at 7, 20.  Defendant does not object to notice by mail and email, *see* Dkt. No. 116 at 27, and such methods are approved.

### *1. Method of Distribution*

Defendant opposes Plaintiffs' request to send notice to potential members of the collective via text message.  "Such methods of distribution are ordinarily approved, especially 'where … the nature of the employer's business facilitate[s] a high turnover rate among employees,'" which most commonly has been seen in litigation regarding restaurant employment policies. *Lijun Geng*

*v. Shu Han Ju Restaurant II Corp.*, No. 18-CV-12220, 2019 WL 4493429, *20 (S.D.N.Y. Sept. 9, 2019) (quoting *Vasto v. Credico (USA) LLC*, No. 15-CV-9298, 2016 WL 2658172, *16 (S.D.N.Y. May 5, 2016)).  However, some courts have declined to approve text message notice where the plaintiff fails to "sufficiently demonstrated that turnover and relocation by potential members of the collective [would] render mailed notice ineffective." *Turban v. Bar Giocosa Corp.*, No. 19-CV-1138, 2019 WL 3817338, at *1 (S.D.N.Y. Aug. 14, 2019).  Here, as opposed to the restaurant industry, there is no evidence of high turnover such that mail notice would be ineffective.  The Court declines to authorize text message notice as "without more information regarding the [employees'] typical length of employment, the Court will not authorize distribution via text message." *Park v. FDM Grp. Inc.*, No. 16-CV-1520, 2019 WL 2205715, *7 (S.D.N.Y. May 22, 2019).

Plaintiffs seek to order Defendant to post a copy of the approved notice "in a conspicuous location in Defendant's common break areas within Defendant's work facilities for the duration of the opt-in period."  Dkt. No. 115-22 at 2.  The Court finds that the request to post a notice at Defendant's business is appropriate and one that is routinely approved by courts in this Circuit. *See Spack v. Trans World Entertainment Corporation*, No. 1:17-CV-1335, 2019 WL 192344, *15 (N.D.N.Y. Jan. 15, 2019) (citing *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 3d 445, 449 (S.D.N.Y. 2011)); *Enriquez*, 2012 WL 440691, at *5 ("Posting the notice is a reasonable means of assuaging the vagaries of notice by mail, and would not unduly burden the defendants").  Accordingly, the Court grants the request to post the notice and consent form in Defendant's locations with patient care workers for the entirety of the notice period.

### 2. Content of the Notice

"Courts have broad discretion to craft appropriate notices that effectuate the overarching policies of the collective suit provisions and provide employees with accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hernandez v. Immortal Rise, Inc.*, No. 11-CV-4360, 2012 WL 4369746, *6 (E.D.N.Y. Sept. 24, 2012) (internal quotation omitted).  To determine whether a proposed notice is appropriate, "[c]ourts consider the overarching policies of the collective suit provisions and whether the proposed notice provides 'accurate and timely notice concerning the pendency of the collective action, so that [an individual receiving the notice] can make an informed decision about whether to participate.'" *Ting Qui Qui v. Shanghai Cuisine, Inc.*, No. 18-CV-5448, 2019 WL 6002371, *4 (S.D.N.Y. Nov. 14, 2019) (quoting *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 59 (S.D.N.Y. 2009)).  Courts have broad discretion in approving the contents of the proposed notice.  *See id.* (citing *Fasanelli*, 516 F. Supp. 2d at 323).

Per the findings above, the Court denies Defendant's requests to limit the collective to those working at the Nott Street location, *see* Dkt. No. 116 at 24-25, and to remove LPNs from the collective.  *See* Dkt. No. 116 at 25.

Defendant requests to remove language "that heavily implies the Court encourages participation in the suit," such as "[t]he Court has determined that you are entitled..." and "[t]he Court has determined that you have a right. … "  Dkt. No. 116 at 27.  Plaintiffs have not responded to this argument.  The Court agrees that reference to "the Court" in these sections could be read to imply that the Court is encouraging potential plaintiffs to opt-in.  Although the Court will not order this factually accurate language removed, the Court directs Plaintiffs to add a disclaimer to that notice section, which provides that the Court neither encourages nor discourages participation in the action, as Defendant has requested.  *See Mason v. Lumber*

20

*Liquidators, Inc.*, No. 17-CV-4780, 2019 WL 2088609, *15 (E.D.N.Y. May 13, 2019) (citations omitted).

In the proposed notice, Plaintiffs instruct that "[i]f you choose to join this collective action lawsuit, you will be represented by Ms. Davella and the Ellis Patient Care Workers' attorneys listed below," and lists Carolyn Cottrell, Samantha Smith, Taylor Jones, and Ved Chitale.  Dkt. No. 115 at 7.  However, Samantha Smith, Taylor Jones, and Ved Chitale have all withdrawn as attorneys.  *See* Dkt. Nos. 119-20.  Accordingly, the Court orders Plaintiff to conform the notice to the current representation, which includes John J. Nestico and Ori Edelstein.  *See* Dkt. Nos. 13, 15, 118, 120.

The Court directs the parties to confer on the issue of the notice. After the parties have conferred, Plaintiffs are directed to provide to the Court a new joint proposed notice within thirty days of the issuance of this Memorandum-Decision and Order.

### 3. Notice Period

The statute of limitations under the FLSA is generally two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).  "An FLSA action is commenced for a named plaintiff upon the date the complaint is filed, and for an opt-in plaintiff in a collective action upon the date written consent is filed with the court."  *Lijun Geng*, 2019 WL 4493429, at *16 (citing 29 U.S.C. §§ 256(a)–(b)).  District courts "'routinely' apply the three-year statute of limitations to the notice period when plaintiffs plead a willful violation of the FLSA."  *Id.* at *17 (quoting *Cohen v. Gerson Lherman Grp.*, 686 F. Supp. 2d 317, 331 (S.D.N.Y. 2010)).  "In keeping with the FLSA's broad remedial purpose, because equitable tolling issues often arise as to individual opt-in

plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint." *Id.* (internal citations and quotations omitted).

Defendant argues that because "the limitations period is three years from the time a plaintiff opts in, and Plaintiffs have not requested equitable tolling … if the Court grants certification, the time period should be three years prior to the Court's decision." Dkt. No. 116 at 26. At this time, Plaintiffs have alleged a willful violation of the FLSA, and because the Court has an interest in avoiding any merit-based determination at this time, the Court will allow notice to be distributed to potential opt-in plaintiffs employed by Defendant during the three years preceding the date Plaintiffs filed the complaint, subject to possible decertification at a later time. *See Lijun Geng*, 2019 WL 4493429, at *17 (quoting *Fasanelli*, 416 F. Supp. 2d at 323). The Court finds that keying the look-back period to the initial complaint and not the amended complaint is appropriate "given how often equitable tolling issues emerge in FLSA cases." *Lopes v. Heso, Inc.*, No. 16-CV-6796, 2017 WL 4863084, *6 (E.D.N.Y. Oct. 27, 2017); *see, e.g.*, *Boice v. M+W U.S., Inc.*, No. 1:14-CV-505, 2016 WL 11476964, *7 (N.D.N.Y. Sept. 7, 2016) ("The three-year notice period should run from the date that plaintiff filed his initial complaint …"). For these reasons, the notice period will extend back to June 30, 2017, three years prior to the filing of Plaintiff Davella's initial complaint on June 30, 2020. *See* Dkt. No. 1.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiffs' motion to conditionally certify an FLSA collective action (Dkt. No. 115) is **GRANTED**; and the Court further

**ORDERS** that the issuance of notice to the collective is authorized, limited as set forth in the accompanying Memorandum-Decision and Order; and the Court further

**ORDERS** that within **ten (10) days** of this Decision, Defendant shall produce in electronic format the contact information, names and last known addresses consistent with the foregoing decision, for all patient care workers employed by Defendant from June 30, 2017, to present; and the Court further

**ORDERS** that the parties confer and submit to the Court a joint proposed notice to all class members within **thirty (30) days** of the date of this Memorandum-Decision and Order; and the Court further

**ORDERS** that Plaintiff is permitted to hire a third-party notice administrator to disseminate notice.  The Notice shall be sent to all putative collective members by U.S. Mail and email, where available.  The opt-in period shall be **sixty (60) days** from the date of mailing of the Notice; and the Court further

**ORDERS** that Plaintiffs' proposed Reminder Postcard is adopted, and that the Reminder Postcard shall be sent to all putative collective members who have not yet returned a signed opt-in consent form in this case **thirty (30) days** after notice is initially sent; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of the Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  August 21, 2023
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

23