

August 5, 2024

**VIA ECF**

Hon. Mitchell J. Katz, U.S. Magistrate Judge
James M. Hanley Federal Building & U.S. Courthouse
100 S. Clinton St.
Syracuse, NY 13261

**RE: Case No. 1:20-cv-0726 (MAD/MJK); *Davella v. Ellis Hospital, Inc.*, In the United States District Court for the Northern District of New York**

Dear Judge Katz:

Plaintiff Denise Davella submits this Letter Brief in accordance with your July 23, 2024, Text Order (ECF No. 169) setting a briefing schedule for the Parties' dispute regarding Fair Labor Standards Act ("FLSA") opt-in discovery. As set forth below, the Court should (a) limit Defendant's written discovery to five (5) interrogatories and five (5) requests for production served on a randomly selected ten percent (10%) of the opt-in collective; and (b) allow Defendant to take no more than eighteen (18) three-hour, remote depositions of randomly selected collective members. Moreover, if any opt-in plaintiff is unable to respond to discovery or attend their deposition, rather than being dismissed, another individual should be chosen to replace them.

Plaintiff's proposal follows case law across the country, as well as Fed. R. Civ. P. 1, which directs Courts to administer the Federal Rules "to secure the just, speedy, and inexpensive determination of every action. . . ." The Court should thus limit discovery accordingly.

## I. BACKGROUND

This is a conditionally certified FLSA collective action involving patient care employees, such as nurses, LPNs and PCTs. *See* Order on Conditional Certification (ECF No. 124) at 17. Plaintiff alleges that, *inter alia*, she and others are forced to work "off-the-clock" by Defendant's company-wide patient-care, timekeeping, meal break, and overtime policies, Generally, the "off-the-clock" work happens either before/after their scheduled shifts and/or during their unpaid meal breaks. *See* Memorandum of Law in Support of Plaintiff's Motion for Conditional Certification (ECF No. 115-1) at 3-6. Moreover, as we are dealing with healthcare employees, Plaintiff and the opt-ins are obligated to prioritize patient health and safety, rendering them being functionally "on-call" and subjected to interruptions during attempted meal periods. *Id*. at 4. As Judge D'Agostino recognized when she conditionally-certified this action, employees company-wide are subject to the same policies and ethical obligations. (ECF No. 124) at 18 ("no individual departments have discretion to change the company-wide policies affecting non-exempt employees, including ethics requirements, and automatic lunch break deduction . . . .")

The FLSA notice period closed on May 6, 2023. Two-hundred and seventeen (217) employees opted in. Declaration of Robert E. Morelli, III ("Morelli Decl.") at ¶ 4, attached as *Exhibit*


*1*. On June 28, 2024, Defendant's counsel informed Plaintiff's counsel that they intended to issue 25 document requests and 20 interrogatories for each opt-in. They also informed Plaintiff's counsel that they will take 67 depositions (while reserving the right to take an additional 150) **for a total of 9,765 written discovery requests and up to 469 hours of deposition questioning**. *See Exhibit A*.

Plaintiff's counsel responded to Defense counsel that same day. *See Exhibit B*. The undersigned rejected this patently overbroad proposal. Plaintiff's counsel suggested that written discovery and depositions should be limited to a random, six percent (6%) sample of the collective.[1] Under this proposal, written discovery would consist of five (5) interrogatories and five (5) requests for production of documents, with an equal number of opt-ins sitting for 2-hour, remote depositions.

The Court held a Status Conference on July 2, 2024, before Defendant responded to Plaintiff's opt-in discovery proposal. *See* July 2, 2024, Minute Entry. At the Conference, the Court indicated that it thought Defendant's discovery proposal was overly broad, asked the Parties to continue their negotiations, and set a second Status Conference for July 23, 2024.

Defendant then waited until July 11, 2024, to send a response to Plaintiff's opt-in discovery proposal. *See Exhibit C*. Defendant therein revised its discovery proposal but still demanded the right to serve **4,340 written discovery requests and take up to one-hundred and eighty** (**180) hours** of in-person deposition testimony. This would be in addition to the nine (9) deposition of Plaintiff and opt-in plaintiffs, which Defendant took prior to conditional certification. *See id*. *See also* Morelli Decl. at ¶ 5.

Plaintiff rejected this proposal on July 18, 2024, reiterating that case law demonstrates that written discovery should proceed only as to a representative sample of opt-in plaintiffs. *See Exhibit D*. Plaintiff then proposed that a ten percent (10%) random sample of the collective be served with five (5) interrogatories and five (5) requests for production, with a sixty (60) day response deadline. *See Scott v. Bimbo Bakeries, USA, Inc.*, No. 10-3154, 2012 U.S. Dist. LEXIS 175016, at *18 (E.D. Pa. Dec. 11, 2012) ("A representative sampling of opt-ins, not to exceed ten percent (10%) of the final total number of opt-ins, shall be subject to respond to written discovery during this phase. Responses and objections to such written discovery shall be served within sixty (60) days."). Plaintiff also agreed to a total of eighteen (18) three (3) hour remote opt-in depositions. *Ex. D*. Defendant rejected this proposal. *Exhibit E*.

The Parties apprised the Court of their respective positions at the July 23, 2024, status conference. The Court subsequently ordered the Parties to brief this issue. (ECF No. 169).

---

[1] Plaintiff also noted that she would consider Defendant's proposal if it agreed that Plaintiff was likewise entitled to the same discovery (67 depositions, 4,340 interrogatories, and 5,425 requests for production). Defendant did not agree. *See Exhibit C*.


## II. ARGUMENT

Defendant's written discovery should be limited to five (5) interrogatories and five (5) requests for production served on a randomly selected ten percent (10%) of the of opt-in plaintiffs. Likewise, Defendant should be allowed to take no more than eighteen (18) three-hour, remote depositions of randomly selected opt-in plaintiffs. Further, if one or more of the randomly selected collective member does not timely respond to discovery or is otherwise unable to appear for a deposition, a new opt-in plaintiff should be randomly selected to respond to the discovery demands and appear for a deposition. These proposals are in accord with case law not only in this Circuit, but across the nation.

    a. <u>A Ten Percent Sampling of Collective Members Should be Served with Five Interrogatories and Five Requests for Production with a Sixty-Day Response Deadline.</u>

Courts in this Circuit routinely limit collective action discovery to a sampling of opt-in plaintiffs. *Onate v. Ahrc Health Care, Inc.*, No. 20-cv-8292 (AS) (JW), 2023 U.S. Dist. LEXIS 191893, at *6 (S.D.N.Y. Oct. 23, 2023); *Strauch v. Comput. Scis. Corp.*, No. 3:14 CV 956 (JBA), 2015 U.S. Dist. LEXIS 15756, at *11 (D. Conn. Feb. 10, 2015); *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 188, 193 (S.D.N.Y. 2014) ("*Chipotle*"). *See also Prentice v. Fund for Pub. Interest Research, Inc.*, C-06-7776SC, 2007 U.S. Dist. LEXIS 71122, 2007 WL 2729187, at *5 (N.D. Cal. Sept. 18, 2007) ("individualized discovery is rarely appropriate in FLSA collective actions."); *Davis v. Westgate Planet Hollywood Las Vegas, LLC*, No. 2:08-cv-00722-RCJ-PAL, 2010 U.S. Dist. LEXIS 80787, 2010 WL 2872406, at *3-4 (D. Nev. July 19, 2010) (defendants were limited to a 10% representative sample); *Smith v. Lowe's Home Centers, Inc.*, 236 F.R.D. 354, 357-58 (S.D. Ohio 2006) ("limiting discovery to a statistically significant representative sampling . . . will both reasonably minimize the otherwise extraordinary burden imposed on the plaintiffs and their counsel and yet afford the defendant a reasonable opportunity to explore, discover, and establish an evidentiary basis for its defenses.") The Court here should limit such discovery to five (5) interrogatories and five (5) requests for production served on a randomly selected ten percent (10%) of the of opt-in plaintiffs, with a sixty-day response deadline.

Written discovery sampling is especially warranted given that there are 217 Opt-in Plaintiffs. *Lloyd v. J.P. Morgan Chase & Co.*, 2015 U.S. Dist. LEXIS 35161, at *11-12 (S.D.N.Y. Mar. 20, 2015) (citations and quotations omitted) ("it appears that when the number of opt-in plaintiffs is approaching 200, courts are more inclined to order a representative sampling."); *Onate*, 2023 U.S. Dist. LEXIS 191893 at *6 (same). Courts use representative sampling in these circumstances because "[p]ermitting the full scope of discovery authorized by the Federal Rules of Civil Procedure would undermine the purpose of conditionally certifying a collective action and would be unreasonably burdensome and wasteful of the parties' and the court's resources." *Cranney v. Carriage Servs.*, No. 2:07-cv-01587-RLH-PAL, 2008 U.S. Dist. LEXIS 113606, at *15 (D. Nev. June 16, 2008) (limiting discovery to 10% of collective members).

Given the size of the collective, Defendant's proposed discovery plan is extremely burdensome and far outweigh any alleged benefit it may conjure up. Plaintiff's counsel estimates it will take between 379.75 to 976.5 hours to prepare and finalize responses to such requests.



Morelli Decl. at ¶ 6. In counsel's experience, it takes anywhere from 1 hour and 45 minutes to 4 hours and 30 minutes per person to adequately respond to opt-in discovery requests in similar cases. *Id.* at ¶ 7. It typically takes several contact attempts to reach any given opt-in Plaintiff. They are healthcare workers who work long and odd hours and are not typically able to have an extended phone call during normal business hours. *Id.* Once counsel reaches them, we work with them to get a mutually agreeable date and time to go over the discovery requests. *Id.*

The call to go over the discovery requests can take anywhere from 30 minutes to 2 hours, depending on the person's employment history with the Defendant. *Id.* at ¶ 8. After that, we then prepare and review the first draft of the responses based on the notes from the discovery call. Given the number of requests at issue, this process takes 45 minutes to 1.5 hours, depending on the person's claims and specific facts. *Id.* This process also often results in further communications with the opt-in plaintiff to clear up any ambiguities. *Id.* As noted above, this typically requires several contact efforts, thereby adding additional time to the process. Thereafter, a senior attorney typically reviews the discovery responses and looks for responses that need to be clarified, and otherwise ensure that the answers are in fact responsive, and that we are not disclosing any privileged or otherwise objectionable information or material. *Id.* This process typically takes 30 minutes to 1 hour per set of discovery. After that is done, we can send the responses to the client for review and signature. *Id.* If all goes well, the responses are signed and returned. Often, however, opt-in plaintiffs have changes that need to be made, or recall additional information that needs to be added, and the drafting/editing process must occur again. *Id.* Finally, once we obtain the final, signed responses, we add our objections, which takes additional time. *Id.* Thus, when everything goes as planned, the total discovery process takes anywhere from 1 hour and 45 minutes to 4 hours and 30 minutes per person, making an average of 3 hours and 7 minutes per person. *Id.* This is a conservative estimate of the collective action discovery process. *Id.* at ¶ 9.

Moreover, the attorney time expended in responding to such voluminous demands would result in hundreds of thousands of dollars in attorney's fees. For example, if the average hourly rate for attorneys working on this endeavor is a modest $450 per hour and our firm spent an average of 3.125 hours working with each opt-in plaintiff to collect responsive documents, review such documents and prepare them for a production, and respond to interrogatories, the attorneys' fees would be over $300,000.00. Morelli Decl. at ¶ 10. This does not even factor in the time spent preparing and defending for depositions. If that is included, it is reasonable to assume that would require an additional $121,500.00 in attorney's fees. *Id.* This is based on modest assumptions, such that each of Defendant's proposed 49 depositions take 4 hours, and opt-in Plaintiff's and their counsel spend 2 hours preparing for each deposition. *Id.*

This figure also skyrockets when applied to Plaintiff's counsel typical rates. Plaintiff's counsel regularly has rates approved at $750.00 to $1,295.00 in similar cases. *See Beissel v. W. Flyer Express, LLC*, No. CIV-21-903-R, 2023 U.S. Dist. LEXIS 197749, at *9 (W.D. Okla. Nov. 3, 2023) (awarding one-third fee award, plus costs, and holding that "the hourly rates of Schneider Wallace Cottrell Konecky LLP [] are reasonable, and that the estimated hours expended are reasonable"); *Wright v. Frontier Management LLC*, No. 2:19-cv-01767-JAM-CKD, ECF 103 (N.D. Cal. Mar. 13, 2023) (approving a one-third fee award and finding "Class Counsel's hourly rates are within the prevailing range of hourly rates charged by attorneys providing similar services in class action, wage-and-hour cases."); *Huddleston v. John Christner Trucking LLC*, No. 4:17-



cv-00549-GKF-CDL, ECF 285 (N.D. Okla. Oct. 31, 2022) (approving a one-third fee award and finding "Class Counsel have extensive experience, reputation, and ability that propelled the excellent result obtained for the Class Members" and "the requested fee award is consistent with consumer and wage and hour class and collective action litigation in this Circuit and across the country"); *Villafan v. Broadspectrum Downstream Services, Inc.*, et al., Case No. 3:18-cv-06741-LB, ECF 150 (N.D. Cal. Apr. 8, 2021) (awarding one-third fee award, plus costs, and holding that SWCK's "billing rates are normal and customary (and thus reasonable) for lawyers of comparable experience doing similar work. In that case, even assuming attorneys billed at the lower rate of $750.00 per hour, it would take $ 508,593.75 in attorney's fees to respond to written discovery alone. Morelli Decl. at ¶ 11. Defendant's demand to take individual discovery from every opt-in plaintiff is thus patently overbroad and unduly burdensome. *See Flood v. Carlson Restaurants Inc.*, 2016 WL 3221146, at *5 (S.D.N.Y. June 7, 2016) (holding that the defendants' proposal, which would subject up to 720 individuals to discovery, is "unduly burdensome[.]")

In addition to burden caused by the sheer volume of Defendant's proposed 4,340 written requests, the fact is that this is a straight-forward case with very simple claims: collective members maintain they worked without pay before/after their shifts and during their automatically deducted meal breaks. *See* Third Am. Compl. (ECF No. 88) at ¶¶ 2-3. Defendant already possesses most information about collective members it needs to investigate these claims and prepare its defenses (e.g., supervisor names, dates of employment, job duties, compensation, meal break policies, and time clock records). *See Onate*, 2023 U.S. Dist. LEXIS 191893, at *7. As one court explained, Defendant's

> request to seek written discovery from each individual opt-in plaintiff is unduly burdensome. [Defendant] itself is in possession, or should be in possession, of much of the information or documentation it seeks, including names of supervisors, work schedules, performance reviews, and bonus compensation. Furthermore, it is likely that the information provided by the opt-in plaintiffs on these topics will be generic, unhelpful, or perhaps even inaccurate, as the information will be based on the memories of the opt-in plaintiffs; therefore, the responses from the opt-ins likely would be less reliable than the electronic data maintained by [Defendant]

*Chipotle*, 300 F.R.D. at 193. Defendant also has a captive audience: it can freely speak with any of its non-opt in current employees regarding their job duties and experiences in all its departments, locations, and job categories. It can therefore gather information regarding purported dissimilarities between the respective departments, locations, and job categories without serving any discovery.

For these same reasons, Defendant's suggested ten (10) document requests and ten (10) interrogatories is overly broad. If the written discovery excludes information already known to Defendant, then five (5) interrogatories and five (5) requests for production, with a sixty (60) day response deadline, should be more than sufficient. *See Scott*, 2012 U.S. Dist. LEXIS 175016 at *18.

b. The Court Should Limit Defendant to Eighteen, Remote Depositions Capped at Three Hours.

The Court should allow Defendant to take no more than eighteen (18) three-hour, remote depositions of randomly selected collective members. Courts regularly limit the total number of depositions employers may take in collective actions, recognizing that depositions are a more burdensome form of discovery. *See, e.g.*, *Chipotle*, 300 F.R.D. at 190-92 (allowing depositions of 10% of the opt-in population but permitting defendants to serve written discovery on 15 additional opt-in plaintiffs); *See Scott*, 2012 U.S. Dist. LEXIS 175016 at *18 (permitting depositions of 5 party plaintiffs and 15 opt-ins and service of interrogatories on 10% of collective members); *Mikityuk v. Cision US Inc.*, No. 21-cv-510 (LJL), 2021 U.S. Dist. LEXIS 224896, at *8 (S.D.N.Y. Nov. 22, 2021) (allowing written discovery on 37 opt-in plaintiffs, but limiting depositions to 15 opt-in plaintiffs as the court was not convinced "that at this stage of the case the depositions of each of the thirty-seven opt-ins is necessary or that the benefit of such depositions would not be substantially outweighed by the burden placed on the individual litigants and on the collective as a whole."). Courts also routinely deviate from the statutory 7-hour rule, Fed. R. Civ. P. 30(d)(1), and hold that deposition time be truncated based on the number of proposed deponents. *See, e.g.*, *Zivali v. AT&T Mobility, LLC*, No. 08 Civ. 10310, ECF No. 142 (S.D.N.Y. Apr. 6, 2010) (2 hours.)

Courts impose these limitations as otherwise discovery would "defeat the very purpose contemplated by Congress in authorizing these collective actions." *Higueros v. N.Y. State Catholic Health Plan, Inc.*, No. CV 07-418 (ADS) (ETB), 2009 U.S. Dist. LEXIS 97409, at *6 (E.D.N.Y. Oct. 21, 2009) (denying request to take 41 total depositions). Collective actions are intended to promote the "efficient adjudication of similar claims, so 'similarly situated' employees, whose claims are often small and not likely to be brought on an individual basis, may join together and pool their resources to prosecute their claims.") *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007.)

Nonetheless, Defendant claims that these depositions are necessary to prepare for decertification given the five (5) locations and various departments and job titles. But this puts the cart before the horse. The Federal Rules provide each litigant with a right to take (10) ten depositions. Fed. R. Civ. P. 30(a)(2)(A)(i). Courts generally do "not grant leave to expand the number of depositions until the moving party has exhausted the ten depositions permitted as of right." *Gen. Elec. Co. v. Indem. Ins. Co. of N. Am.*, 2006 U.S. Dist. LEXIS 101586, 2006 WL 1525970, *2 (D. Conn. 2006). Even then, the moving party must establish good cause before courts authorize additional depositions. *Parimal v. Manitex Int'l, Inc.*, No. 3:19CV01910(MPS), 2021 U.S. Dist. LEXIS 94060, at *6 (D. Conn. May 18, 2021). This requires the moving party to provide evidence sufficient for the court to determine "whether the testimony sought from certain witnesses would be unreasonably cumulative or duplicative." *Marseet v. Rochester Inst. of Tech.*, No. 20-CV-7096FPG, 2023 U.S. Dist. LEXIS 14397, at *34 (W.D.N.Y. Jan. 27, 2023) (quoting *Parimal*, 2021 U.S. Dist. LEXIS 94060 at *4-5.)

The inherent problem with Defendant's proposal is that is presumes without establishing that there are material differences among the collective members. Ellis must show that there are disparate factual and employment settings and individualized defenses to decertify this matter.



*Lassen v. Hoyt Livery, Inc.*, No. 13-cv-1529 (VAB), 2016 U.S. Dist. LEXIS 169506, at *36 (D. Conn. Dec. 8, 2016). Defendant simply ask the Court to assume that there are disparate factual and employment settings among the collective entitling it to **at least** one hundred and eighty (180) hours of in-person deposition testimony. But that is not how the Federal Rules work. As noted above, Defendant must establish good cause to exceed the presumptive ten (10) deposition limit. At a minimum this requires Ellis to provide specific, nonconclusory evidence regarding the nature of the expected testimony and how that testimony is expected to differ from the testimony of others. *Marseet*, 2023 U.S. Dist. LEXIS 14397 at *33.

But Defendant cannot meet this burden. Judge D'Agostino already determined that the evidence thus far, including the nine (9) depositions Defendant took, demonstrated that Plaintiffs and collective members are similarly situated. Order on Conditional Certification (ECF No. 124) at 12 ("The deposition testimonies support allegations of a common policy or practice of requiring work during mealtimes, and a failure to pay for such work because of meal deduction policies.") In other words, Defendant already tried (and failed) to assert that the deposition testimony thus far demonstrates disparate factual and employment settings among collective members. *See id.* Thus, given these circumstances, Plaintiff's proposal to allow Defendant an **additional** eighteen (18) three-hour, remote depositions is imminently reasonable.[2]

*i. The deposition should be remote.*

The Court should also order that the opt-in depositions be remotely conducted via a teleconference service. Courts frequently order remote depositions of FLSA plaintiffs at the expense of FLSA defendants. *See Brasfield v. Source Broadband Servs., LLC*, 255 F.R.D. 447, 450 (W.D. Tenn. 2008); *see also Angamarca v. Da Ciro, Inc.*, 303 F.R.D. 445, 448 (S.D.N.Y. 2012); *Gee v. Suntrust Mortg., Inc.*, No. 10-CV-01509, 2011 U.S. Dist. LEXIS 131935, 2011 WL 5597124, at *3 (N.D. Cal. Nov. 15, 2011). These courts emphasize the expense-savings rationale behind FLSA collective actions and the fact that opt-in plaintiffs "did not choose the forum; the forum was chosen for them." *Brasfield*, 255 F.R.D. at 450.

While the preconditional certification depositions were in-person, the case is now in a drastically different procedural posture, with hundreds more opt-ins. Moreover, requiring the opt-ins and their counsel and to travel to Defendant's counsel's law firm for Defendant's proposed 49 in-person depositions would be a significant waste of time and money. Counsel for Plaintiff defending these depositions are based in Memphis, Tennessee and Emeryville California. Morelli Decl. at ¶ 12. The additional travel costs for counsel to attend 49 in-person depositions would be astronomical.[3] It would also unduly burden the collective members who, as nurses, work long and odd hours and would have to request valuable time off to attend depositions that could be conducted remotely without prejudicing Defendant.

---

[2] Defendant would thus have completed 27 total depositions at the close of opt-in discovery.

[3] Defendant also suggests that Plaintiff's counsel could attend the depositions remotely while the collective members attend in person. However, Plaintiff's counsel cannot agree to that as, in their experience, even with sufficient preparation opt-in plaintiffs are unfamiliar with and uncomfortable with such proceedings and expect their counsel to be with them at any in-person proceeding. Morelli Decl. at ¶ 12.



Remote depositions in this case thus comport with the Federal Rules requirement to employ procedures that promote the "speedy[] and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. The Court has broad discretion in determining the location and/or method of depositions and in issuing protective orders. *Tangtiwatanapaibul v. Tom & Toon Inc.*, No. 1:17-cv-00816 (LGS) (KHP), 2017 U.S. Dist. LEXIS 233395, at *6 (S.D.N.Y. Nov. 22, 2017) (citing Fed. R. Civ. P. 26(c)(1)) Accordingly, Plaintiff respectfully requests that the Court use that discretion and require Defendant to conduct the opt-in depositions remotely.

*ii. Collective members should be replaced, not dismissed, if they are unable to answer discovery or attend a deposition.*

If one or more of the randomly selected collective member does not timely respond to Defendant's written discovery demands or is otherwise unable to appear for his or her deposition, a new opt-in plaintiff should be randomly selected to respond to the discovery demands and appear for a deposition. *See Chipotle*, 300 F.R.D. at 193 ("If an opt-in plaintiff fails to respond to the written discovery, he or she will be replaced by the original method of selection.")

## III. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that Your Honor issue an Order: (i) limiting written discovery to a random sampling of 10% of the entire opt-in; (ii) limiting the number of depositions to 18 opt-in plaintiffs to be chosen at random; (iii) limited the duration of such depositions to 3 hours each and requiring them to be conducted remotely; (iv) providing at least 60 days to serve responses to Defendant's written discovery demands; and (v) requiring that any collective member that is unable to answer discovery or attend a deposition be replaced by another that can, and not dismissed.

Sincerely,

SCHNEIDER WALLACE
COTTRELL KONECKY LLP

Robert E. Morelli, III
Attorney at law

cc: Michael D. Billok (billokm@bsk.com)
Eric M. O'Bryan (eobryan@bsk.com)