UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DENISE DAVELLA, on behalf of herself and all others
similarly situated,

                           Plaintiff,

          v.

ELLIS HOSPITAL, INC.,

                           Defendant.

Civil Action No. 1:20-cv-00726 (MAD/MJK)

---

# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S PROPOSED FAIR LABOR STANDARDS ACT OPT-IN DISCOVERY

---

Michael D. Billok, Esq.
Eric M. O'Bryan, Esq.
BOND, SCHOENECK & KING, PLLC
*Attorneys for Defendant*
268 Broadway, Suite 104
Saratoga Springs, New York 12866

# TABLE OF CONTENTS

<u>Page</u>

PRELIMINARY STATEMENT ........................................................................ 1

FACTUAL BACKGROUND ............................................................................ 2

    I.      Plaintiff's First Three Complaints ............................................. 2

    II.     The Revolving Door of Opt-In Plaintiffs ................................... 4

    III.    Details Regarding the Collective, and the Discovery Sought .................... 7

ARGUMENT .................................................................................................. 9

  POINT I  BASED UPON THE CASE LAW IN THIS CIRCUIT, DEFENDANT'S PROPOSAL IS REASONABLE ................................................................ 9

  POINT II  PLAINTIFF'S ARGUMENTS ARE WITHOUT MERIT ............................... 13

        A.    Plaintiff's Argument that Ellis Must Establish Differences to Get Discovery is Nonsensical ................................................. 13

        B.    Ellis's Proposal is Reasonable and Does Not Impose an Undue Burden ......................................................................... 17

        C.    Depositions of the Opt-In Plaintiffs Should Be Held in Person .......... 20

        D.    Any Deponent That Fails to Appear Should be Dismissed ................ 22

CONCLUSION ............................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Naughton*,
No. 9:08-CV-176, 2010 WL 2070679 (N.D.N.Y. May 21, 2010).............................. 23

*Angamarca v Da Ciro, Inc.*,
303 F.R.D. 445 (S.D.N.Y. 2014) .............................................................. 21

*Bethel v. BlueMercury, Inc.*,
No. 21 Civ. 2743, 2022 WL 3594575 (S.D.N.Y. Aug. 22, 2022) ............................ 14

*Brasfield v. Source Broadband Servs., LLC*,
255 F.R.D. 447 (W.D. Tenn. 2008) ........................................................... 21

*Cranney v. Carriage Servs., Inc.*,
2008 WL 2457912 (D.Nev. 2008) ....................................................... 9, 10

*Elliot v. Schlumberger Technology Corp.*,
No. 3:13-cv-79, 2015 WL 13740759 (D. N.D. June 10, 2015) ................................ 20

*Frisbie v. Feast American Diners*,
No. 17-CV-6270, 2020 WL 2305083 (W.D.N.Y. May 8, 2020).......................... 19, 20

*Gee v. SunTrust Mortg., Inc.*,
No. 10-CV-01509, 2011 WL 5597124 (N.D. Cal. Nov. 15, 2011)............................ 21

*Lloyd v. J.P. Morgan Chase & Co.*,
No. 11 Civ 9305, 2015 WL 1283681 (S.D.N.Y. Mar. 20, 2015)............ 12, 18, 19, 20

*Marichal v. Attending Home Care Services, LLC*,
432 F. Supp. 3d 271 (E.D.N.Y. 2020) ...................................................... 14

*Marseet v. Rochester Institute of Technology*,
No. 20-CV-7096FPG, 2023 WL 533288 (W.D.N.Y. Jan. 27, 2023).................... 14, 15

*Morse v. Alpine Access, Inc.*,
No. 5:17-CV-0235, 2017 WL 5186464 (N.D.N.Y. Nov. 8, 2017) ............................ 24

*Parimal v. Manitex International, Inc.*,
No. 3:19-CV-01910, 2021 WL 1976311 (D. Conn. May 18, 2021).................... 14, 15

*Pettenato v. Beacon Health Options, Inc.*,
425 F. Supp. 3d 264 (S.D.N.Y. 2019) ...................................................... 14

18245054.v4-8/23/24

*Prickett v. DeKalb Cty.*,
   349 F.3d 1294 (11th Cir. 2003) .................................................................. 14

*Ruggles v. Wellpoint, Inc.*,
   No. 1:08-CV-201, 2010 WL 11574166 (N.D.N.Y. Jan. 4, 2010)....................... *passim*

*Scott v. Chipotle Mexican Grill, Inc.*,
   300 F.R.D. 188 (S.D.N.Y. 2014) ....................................................... 16, 23

**Statutes**

29 U.S.C. § 216(b) ........................................................................ 14

**Other Authorities**

F.R.C.P. § 30 ................................................................. 13, 14, 15

18245054.v4-8/23/24

## PRELIMINARY STATEMENT

Plaintiff Denise Davella ("Plaintiff") in this case is attempting to eat her cake and have it too. When moving for conditional collective certification, Plaintiff strenuously argued that it was not the time to consider evidence, and that relevant evidence should and would be considered when Defendant ("Defendant" or "Ellis") moved for decertification, however, Plaintiff now seeks to significantly restrict Defendant's ability to obtain such evidence necessary for decertification.

Plaintiff argued in favor of not just including all Registered Nurses employed by Defendant in the collective, but also all patient care workers, and not just those in her department, or even in her location, Ellis Hospital, but at multiple other locations. When Plaintiff's desired collective resulted in just over 200 opt-in plaintiffs, she now claims that discovery of those opt-in plaintiffs is burdensome. Notably, Plaintiff retained attorneys from out of state, with rates double or more than attorneys in the Northern District of New York, but she now argues that such a choice results in a financial and travel burden.

Plaintiff simply cannot have it both ways. She cannot seek to expand the litigation as broadly as possible, and then when Defendant attempts to defend itself, claim that the defense is too burdensome and costly for Plaintiff to bear. Defendant does not seek to depose every opt-in plaintiff, or even half of the opt-in plaintiffs, as case law in this Circuit supports that it can, based on the fact that the number of opt-in plaintiffs is just over 200. Defendant is merely seeking reasonable representation: to depose at least one representative from each position in each department.

## FACTUAL BACKGROUND

While the instant is a discovery dispute, the history of the case provides additional context that may be helpful to the Court's consideration of this matter.

### I.     Plaintiff's First Three Complaints

Plaintiff Denise Davella filed her initial complaint on June 30, 2020, alleging that she was not paid for overtime worked during meal periods in violation of the Fair Labor Standards Act ("FLSA"). Dkt. 1 at 16. Ellis filed a letter with the Court about its intent to file a motion to dismiss for failure to state a claim. Dkt. 11. In response, Plaintiff filed a First Amended Complaint. Dkt. 16. However, Plaintiff's amendments only added details regarding particular weeks worked, and did not alter Plaintiff's FLSA allegation that she was due overtime just for missed meal periods. *Id.* at 7, 17. Accordingly, Ellis again filed a letter with the Court seeking permission to file a motion to dismiss. Dkt. 17.

After Ellis filed its letter, Plaintiff requested Davella's payroll records, and although Ellis did not yet have any obligation to do so, it produced those records on the next business day. *See* Dkt. 48, Ex. 1. Later that afternoon, counsel for Plaintiff represented to counsel for Defendant that they would review the records, and if they showed Davella was paid for all meal periods, they would agree to voluntarily withdraw the complaint if Defendant would not seek attorneys' fees or costs. Dkt. 52.

However, instead of voluntarily withdrawing the complaint when they saw that Davella was paid for all meal periods, Plaintiff filed an FLSA opt-in notice for Lorraine Pizzo, another nurse in the Catheter Lab. Dkt. 19. Plaintiff alleged that Pizzo's meal break periods were unpaid, and thus the case now had a plaintiff who could support the theory of unpaid work during meal breaks. Plaintiff amended the complaint again in October 2020, adding Pizzo's allegations of missed meal periods, as well as allegations that she

2

and others worked off-the-clock before and after their shifts. Dkt. 25. Ellis still filed a motion to dismiss, but the Court denied the motion to dismiss the FLSA claims in May 2021 on the basis that Plaintiff had sufficiently stated a claim. Dkt. 33.

Nevertheless, in October of 2021, counsel for Ellis learned that the basis of Plaintiff's amendments to the complaint in October of 2020—allegations supposedly made by Pizzo—were untrue. Dkt 52. According to Pizzo's testimony, she had explicitly told counsel for Plaintiff that she had <u>not</u> worked off-the-clock before or after her shift, and while she worked through "one or two meal periods total" during her tenure because of an emergency, she "did not inform anyone that [she] had not received a full 30-minute meal period during those one or two instances." Dkt. 106, Ex. 2 ("Pizzo Decl."). However, the October 2020 complaint ostensibly based on allegations from Pizzo claimed she <u>had</u> worked off-the-clock before and after shift and missed the majority of her meal breaks. Dkt. 25 at 7-9. This information was only discovered in October 2021 when Ellis noticed Pizzo's deposition, after which Plaintiff filed a notice of withdrawal for Pizzo and then sought to block any attempt to depose her. Dkt. 45, 47, 48.

Regardless, by the time counsel for Ellis learned how Plaintiffs only saved their case through allegations that were now null due to Pizzo's withdrawal, Plaintiffs submitted the opt-in notice of Pamela Karl. Dkt. No. 46. While Karl, like Davella, was paid for all of her meal periods such that she could not plausibly allege FLSA violations based on missed meal periods, the case continued as it was possible Karl could allege off-the-clock work before or after shift. Dkt. 116, Ex. 7 at ¶¶ 18-19, Ex. 10-11. Only a year later, at Karl's deposition, where Defendant would learn she was making no such allegation for

off-the-clock work before or after shift.[1] Shortly thereafter, Plaintiff also submitted an opt-in notice for Margaret Newman, but Newman did not work more than 40 hours in any week within the three-year statute of limitations of the FLSA. Dkt. 116, Ex. 7 at ¶¶ 21.

## II.    The Revolving Door of Opt-In Plaintiffs[2]

As of October 2021, the opt-in plaintiffs consisted of Denise Davella, who was paid for her meal breaks,[3] and who could provide no times within the statute of limitations where she worked after shift,[4] and no specifics about times she worked before shift,[5] Pamela Karl who was also paid for her meal breaks and who testified she worked no time off-the-clock, and Margaret Newman who did not work more than 40 hours during the FLSA statute of limitations, and thus had no claim.

Plaintiffs naturally sought more opt-ins. Per the Court's order of October 7, 2021 (Dkt. 57), Ellis provided Plaintiffs the names and addresses of current nurses and Respiratory Techs on October 28, 2021, and those of former nurses and Respiratory

---

[1] *See* Dkt. 115, Ex. 13 ("Karl Dep.") at 39 ("Q. Okay. So, you've not worked off the clock post shift?  A. That is correct"), 42 ("Q. Okay. As you testified earlier, you did not perform any work after clocking out, correct? A. That is correct. Q. Okay. Did you ever perform any work prior to clocking in? A. No.").

[2] And attorneys. While John Nestico is the only attorney of record to be admitted in New York State, he has not appeared at any depositions, and attended a single court conference in August 2020. The primary attorney from the start of the case in mid-2020 through late 2021 was William Hogg, but he withdrew shortly after Defendant informed the Court about Pizzo's testimony. Dkts. 52, 62. The next attorney to primarily handle the case was Michael Burke, who handled the case from about November 2021 to March 2022.  Dkts. 62-74. Burke was replaced by Jordyn Rystrom Emmert, who ran point on the case until she withdrew in December 2022. Dkts. 80, 113. Ved Chitale replaced Rystrom Emmert until he withdrew as counsel in February 2023. Dkt. 118. Samantha Smith briefly ran point on this matter until she withdrew as counsel in April 2023. Dkt. 120. Robert Morelli joined this matter in August 2023 and has run point on the case since. Dkt. 131.

[3] Dkt. 116, Ex. 7 at ¶¶ 22-23, Ex. 13-15.

[4] Dkt. 115, Ex. 9 ("Davella Dep."), at 213-15 (recalls only three instances in 2014 of working after clocking out).

[5] Davella Dep. at 33-42.

Techs on November 5, 2021 (Dkt. 60). Following those disclosures, more opt-in plaintiffs began to trickle in:

- Nancy Franco opted in on December 22, 2021. Dkt. 67. She testified that she joined the case after being contacted by Plaintiffs' counsel.[6] She was paid for all of her meal periods,[7] and she testified that she did not work before clocking in or after clocking out.[8] Indeed, at her deposition, she testified she was not aware of any time she worked for which she was not paid.[9]

- Kathleen Rumney opted in on January 5, 2022. Dkt. 68. She testified that the times she believed she was not paid overtime was up to April 2016. Dkt. 115, Ex. 10 ("Rumney Dep.") at 53-55. She testified that since 2016, she received breaks and was paid for them (*id.* at 23-25, 60-62, 65-66, 103-08), that she was not expected to be available before shift (*id.* at 66-67) and that she did not work off-the-clock after shift (*id.* at 62-65). Rumney then opted out on August 22, 2022. Dkt. 100.

- Daniel O'Donnell opted in on April 11, 2022. Dkt. 82. He testified that he joined the case after being contacted by Plaintiff's counsel.[10] He was paid for all of his meal periods.[11] And while he provided vague and conclusory testimony about

---

[6] Dkt. 115, Ex. 11 ("Franco Dep.") at 11-12.

[7] Dkt. 116, Ex. 7 at ¶¶ 24-25, Ex. 16-17.

[8] Franco Dep. at 22 ("Q. Have you ever performed work after clocking out? A. I have not"); 28 ("Q. Okay. I'm going to ask you about the part where it says it expects Plaintiffs to be available to work before their shifts; have you ever performed work before clocking in? A. I have not.").

[9] *Id.* at 44 ("Q. Okay. Are you aware of any time that you have worked at Ellis Hospital for which you have not been paid? A. Not that I remember, no.").

[10] Dkt. 116, Ex. 1 at ¶ 3, Ex. 2 ("O'Donnell Dep."), at 96, 99-100.

[11] Dkt. 116, Ex. 7 at ¶¶ 26-27, Ex. 18.

5

working time off-the-clock, his regular work schedule was three 12-hour shifts per week totaling 36 hours,[12] and he could not identify a pay period in which he worked more than 40 hours in a week.[13]

- Kristin Meluch opted in on April 29, 2022. Dkt. 86. While she was not paid for meal periods, she generally worked three to four six-hour shifts per week, and other than the week of June 2-8, 2019, she did not work more than 40 hours in a week.[14] Meluch also refused to appear for her deposition.[15]

- Shannon Fitzgerald opted in on May 4, 2022. Dkt. 90. She testified that she joined the case after being contacted by Plaintiffs' counsel.[16] She has not worked full-time at Ellis in over 20 years, and has no weeks within the three-year FLSA statute of limitations in which she worked over 40 hours.[17] On September 20, 2022, Plaintiffs' counsel informed Defendant that "we have determined that [she] has no recorded overtime hours within the FLSA statutory period, and we plan to withdraw her Notice of Opt In"—and yet, almost two years later, has not yet done so. Dkt. 106, Ex. 3.

- Virginia Wrighter-Savaria opted in on June 16, 2022. Dkt. 96. She testified that she joined the case after being contacted by Plaintiffs' counsel.[18] She has been paid for all of her meal periods since June 16, 2019.[19] She claimed to work 15-

---

[12] O'Donnell Dep. at 27, 37.
[13] O'Donnell Dep. at 106-08.
[14] Dkt. 116, Ex. 7 at ¶¶ 28-29, Ex. 19-21.
[15] Dkt. 116, Ex. 1 at ¶ 4, Ex. 3.
[16] Dkt. 115, Ex. 15 ("Fitzgerald Dep.") at 17.
[17] *Id.* at 22-23; s*ee also* Dkt. 116, Ex. 7 at ¶¶ 30-31, Ex. 22-24.
[18] Dkt. 116, Ex. 1 at ¶ 5, Ex. 4 ("Wrighter-Savaria Dep."), at 7-8.
[19] Dkt. 116, Ex. 7 at ¶¶ 32-33, Ex. 25-27.

45 minutes after shift two out of three shifts, but then also testified she would clock out late many times without discipline.[20]

- Kandis Bessette opted in on September 15, 2022. Dkt. 103. She was paid for all of her meal periods.[21] She also refused to appear for her deposition.[22]

Plaintiff thereafter filed her motion to conditionally certify the collective on August 21, 2023, and Ellis opposed the motion on January 23, 2023. Dkt 115; Dkt. 116. Judge Mae D'Agostino thereafter issued a decision and order, granting conditional certification and ordering the parties to undergo a notice period. Dkt. 124. After the parties' proposed notice documents and procedure were approved by the Court, opt-in plaintiffs began to join this matter between March 13, 2024, and June 13, 2024. Dkt. 160-161; Dkt. 164-167. During the notice period, an additional 209 employees opted-in to this matter, leaving a total of 217 opt-in employees. *Id.*

### III.  Details Regarding the Collective, and the Discovery Sought

Of the 217 opt-in employees, there are 160 Registered Nurses, 7 Emergency Care Technicians, 4 Critical Care Technicians, 7 Licensed Practical Nurses, 34 Patient Care Technicians, 1 Mental Health Assistant, and 6 Monitor Technicians. Dkt. 170, Ex 1. The opt-in employees work across 5 Ellis locations: Ellis Hospital, Bellevue Woman's Center, Medical Center of Clifton Park, Ellis Primary Care in Glenville, McClellan Street Health

---

[20] Wrighter-Savaria Dep. at 21-23, 31-34.
[21] Dkt. 116, Ex. 7 at ¶¶ 34-35, Ex. 28.
[22] Dkt. 116, Ex. 1 at ¶ 6, Ex. 5.

Center and Ellis Primary Care at Mohawk Harbor.[23] Dkt. 170, Ex 1. Opt-in employees work in 42 departments.[24] Dkt. 170, Ex 1.

To begin post-notice discovery, counsel for Defendant wrote to counsel for Plaintiff on June 28, 2024, outlining Defendant's proposal for depositions and written discovery. Dkt. 170, Ex. 1. In this letter, Defendant proposed 25 document requests and 20 interrogatories to each opt-in party plaintiff, and a representative sample of depositions from each position, unit and location, totaling 67 depositions. *Id.* Plaintiff rejected Defendant's proposal and proposed a discovery plan limited to written discovery and depositions of only a 6% sample of the collective, totaling 18 depositions. *Id.*

Defendant sent Plaintiff a revised discovery proposal on July 11, 2024, outlining further Defendant's need to conduct the number of proposed depositions. Dkt. 170, Ex. 1. In this letter, Defendant reduced their written discovery proposal from 25 document requests and 20 interrogatories to 10 document requests and 10 interrogatories. *Id.*

---

[23] There are 179 opt-in employees located at Ellis Hospital; 20 opt-in employees located at Bellevue Woman's Center; 6 opt-in employees located at the Medical Center of Clifton Park; 1 opt-in employee located at Ellis Primary Care in Glenville; 10 opt-in employees located at the McClellan Street Health Center; and 3 opt-in employees located at Ellis Primary Care at Mohawk Harbor.

[24] Opt-in employees' departments include: 1602 - Pre-Admission Testing; 1606 - Float Pool; 1636 - A3 Nursing Unit; 1631 - A4 Nursing Unit; 1624 - A5 Nursing Unit; 1621 - A6 Nursing Unit; 1625 - B2 Dialysis; 1642 - B3 Adolescent Psych Unit; 1633 - C-1 Cancer and Continued Care Unit; 1641 - C2/C3 Adult Psych Unit; 1634 - C4 Geriatric Unit; 1638 - C5 Adult; 1637 - C6 Neuroscience Unit; 1626 - E1Ns/E2Ns ICU; 1647 - Malta Primary Care II; 1651 - Infusion Center; 1659 – Gastroenterology; 1660 - Operating Room; 1665 – Post-Anesthesia Care Unit (PACU); 1678 - Emergency Department; 1725 - Radiology-Angiography; 1750 - Glenville Health Center; 1757 - Wound Care; 1767 - Cardiac Cath Laboratory; 1815 - ED Observation Unit; 1991 - Cardiac Rehabilitation; 1995 - Crisis Intervention; 2608 - Ob/Gyn; 2610 - Special Care Nursery; 2611 - Labor & Delivery; 2662 - Recovery Room; 3640 – Endocrinology; 3662 - Ambulatory Surgery; 3729 - Family Health Center; 3729 – Ellis Center; 5672 - Urgent Care; Case Management; 1673 - Mohawk Harbor Urgent Care; 1649 - Mohawk Harbor Primary Care; 5693 - Primary Care – Clifton Park; 1680 - Patient Access Center; and 3948 – McClellan Street Health Center.

18245054.v4-8/23/24

Similarly, counsel noted that given the 31 different departments at Ellis Hospital, as well as 5 other locations and 7 different job categories contained within the collective, Plaintiff's proposal to depose only 6% of the collective fails to provide an adequate representative sample. *Id.* Accordingly, Defendant proposed that one deposition from each of the departments and locations be taken for a total of 44 depositions. *Id.* In doing so, counsel outlined the breakdown of the departments and job titles that would make up the proposed 44 depositions. *Id.*

A week later, counsel for Plaintiff responded with an email, rejecting Defendant's proposed discovery plan. *Id.* Plaintiff advised that she would consent to the service of five interrogatories and five requests for production to 10% of the collective. *Id.* However, Plaintiff refused to revise her proposal for depositions, maintaining that their proposal of 18 depositions, 6% of the collective, was appropriate. *Id.* Two days later, counsel for Defendant responded via email and indicated that "[i]t would appear that we will need the court to resolve this dispute." *Id.*

## ARGUMENT

### POINT I

### BASED UPON THE CASE LAW IN THIS CIRCUIT, DEFENDANT'S PROPOSAL IS REASONABLE

In *Ruggles v. Wellpoint, Inc.*, a combined FLSA collective and NYLL class action, now-retired Magistrate Judge Treece analyzed the appropriate scope of discovery after a collective consisting of 331 utilization review nurses, case management nurses and medical management nurses was conditionally certified.[25] *Ruggles v. Wellpoint, Inc.*, No.

---

[25] There were 331 opt-ins as stated in Part I.B of the decision, but the defendant only sought to serve discovery requests upon 297 of the 331 opt-ins as stated in Part I.A.

1:08-CV-201, 2010 WL 11574166, at *3 (N.D.N.Y. Jan. 4, 2010). In assessing the case law surrounding post-certification opt-in discovery, Magistrate Judge Treece noted that while the majority of cases denounce individualized discovery and embrace the use of representative sampling, other precedent categorically permits broader discovery. *Id.*

Critically, Magistrate Judge Treece held that "[w]ithout challenge, it remains a seminal principle that 'fairness dictates that the defendants should be permitted to conduct enough discovery to support a motion to decertify the conditionally certified class.' *Cranney v. Carriage Servs., Inc.*, 2008 WL 2457912, at *3. And an employer should be entitled to know certain fundamental facts about the employee, the work performed, and the nature of the claim directly from that employee." *Id.* Magistrate Judge Treece further held that there were four principles present through the case law:

> First and foremost, discovery remains in the sound discretion of the Court. Second, fundamental fairness dictates that some discovery be extended to defendant employers. Third, assuring that discovery in FLSA cases and Rule 23 class actions do not offend or obfuscate the purpose of such class actions or unreasonably exacerbate the cost of litigation, the court should err on the side of representative sampling when suitable. And, fourth, and probably the most underestimated factor, the extent and degree of discovery is predominately controlled by the size of the opt-in class.

*Id.* In *Ruggles*, Defendant initially sought twenty interrogatories, twenty-seven requests to produce, sixteen requests for admission and deposition testimony from 297 opt-in plaintiffs. *Id.* Defendant thereafter revised its discovery proposal twice, resulting in a final proposal to depose half of the opt-in plaintiffs for a total of 2.5 hours, or 100 opt-in plaintiffs for a total of 3.5 hours. *Id.*

When analyzing the appropriateness of a discovery plan, "[t]he primary factor in determining the degree of individualized discovery is the size of the opt-in class and the

commensurate burden it may create." *Ruggles*, No. 1:08-cv-201, 2010 WL 11574166, at

*5. Judge Treece found that the defendant was entitled to such individualized discovery

from the 297 opt-ins defendant sought to serve:

> In this Court's view, the size of this opt-in class is not
> particularly large, which would allow for greater or broader
> discovery than Plaintiffs contemplate, without obstructing,
> compromising, or sabotaging the purpose and utility of this
> form of class action. … The Court finds that Wellpoint is
> entitled to seek anecdotal evidence that is germane to the
> litigation from each of the Plaintiffs who choose to enter this
> litigation, without generating a needlesome burden or
> substantial expense. In this regard, Wellpoint is entitled to
> both interrogatories and depositions, but with some restraints.

*Id.* The court provided the parties with 10 narrowly tailored and reasonable interrogatories

to be served upon the 297 opt-in plaintiffs. *Id.* Magistrate Judge Treece further held that

"Plaintiffs' proposal of 15% of the class, approximately 50," was "<u>too low</u> for a class of this

size [331]." *Id.* at 5 (emphasis added). He held instead that "depositions of 25% of the

opt-in plaintiffs [82 or 83] is reasonable under these circumstances." *Id.* Magistrate Judge

Treece held that the selection of deponents should "reflect a candidate from each of the

fifteen states implicated in this litigation." *Id.* The Court gave Plaintiff "credit for the six

named Plaintiffs who have already been proposed." *Id.*

Judge Treece found that a collective of 331 opt-in plaintiffs was "not particularly

large." *Id.* Here, the collective is one-third smaller, and thus, the discovery proposed by

Ellis is not overly broad or excessive. Like *Ruggles*, Plaintiff's proposal to depose only

6% of the opt-in plaintiffs, or "no more than eighteen" of 217 opt-in plaintiffs, is far too low

for a collective of this size. *Id.* Rather, with a smaller number of opt-ins than the collective

in *Ruggles* (217 compared to 331), a higher percentage of opt-in depositions is

appropriately justified. After crediting the opt-in Plaintiffs who have already been deposed,

18245054.v4-8/23/24

similar to *Ruggles*, twenty-five percent of the collective in this matter is 45 depositions. However, Defendant is proposing less than this amount, proposing only 44 depositions be taken. Accordingly, Defendant's proposal to depose 44 of the opt-in plaintiffs is well within what was determined as a permissible and reasonable number of opt-in depositions in *Ruggles*.

Further, as in *Ruggles*, the opt-ins in this matter are spread out across multiple areas. Here, the opt-in plaintiffs are located throughout multiple Ellis locations and departments. Due to Plaintiff's expansive collective definition, the resulting collective includes employees from multiple positions, departments and locations. As a result, the discovery needed to support a future motion to decertify the conditionally certified class, as is Defendant's right, requires discovery from employees who work in each job class, department and location. Anything short of this proposal will hinder Defendant's ability to obtain the facts necessary to analyze whether the opt-in plaintiffs are similarly situated during a motion to decertify the collective action. Accordingly, Defendant's need for information from an opt-in plaintiff from each job class, department and location outweighs any proposed burden to plaintiffs. *See Lloyd v. J.P. Morgan Chase & Co.*, No. 11 Civ. 9305, 2015 WL 1283681, at *4 (S.D.N.Y. Mar. 20, 2015) ("In determining how much discovery should be permitted, courts must balance the need for information, the information's importance in resolving the issues and the relief requested with the burden of discovery).

Additionally, Plaintiff's position fails to acknowledge the differences between different job titles, departments and locations represented within the collective and presumes that the experiences of each opt-in plaintiff are identical despite having different

positions, duties and responsibilities and working in different departments and locations. Such a presumption is premature and hinders Defendant's ability to ensure that it possesses the fundamental facts about the opt-in employees regarding the work performed and the nature of their claims. In fact, as the depositions previously taken in this matter have already displayed, each department operates differently and different job titles have varying job duties, resulting in significantly different day to day experiences across the opt-in plaintiffs. *See* Dkt. 116. Accordingly, Defendant will need discovery from a representative opt-in plaintiff from each job description, department and location. Anything short of that will foreclose upon Defendant's ability to conduct enough discovery to support a motion to decertify the conditionally certified class and preclude it from its right under the FLSA to challenge a conditionally certified class. *See Ruggles*, No. 1:08-cv-201, 2010 WL 11574166, at *3-5.

Accordingly, Defendant's proposed individualized written discovery and proposal to conduct one deposition from each of the departments and locations represented within the collective for a total of 44 depositions is reasonable pursuant to the case law in this Circuit. *See Ruggles*, No. 1:08-cv-201, 2010 WL 11574166, at *3-5.

**POINT II**

**PLAINTIFF'S ARGUMENTS ARE WITHOUT MERIT**

*A.* Plaintiff's Argument that *Ellis* Must Establish Differences to Get Discovery is Nonsensical

Plaintiff argues that the number of opt-in plaintiff depositions should be restricted pursuant to Rule 30 of the Federal Rules of Civil Procedure, arguing that leave of court is required for Defendant to have more than 10 depositions in this case. Dkt. 170 at 6. However, Plaintiff's argument misconstrues the requirements of Rule 30. Rule 30 is

13

designed to restrict parties from taking more than 10 depositions <u>against non-parties</u> which will result in cumulative and unnecessary testimony. *See* F.R.C.P. § 30. However, Rule 30 is not intended to restrict a party from taking the deposition of an opposing party and Plaintiff cites to no authority which indicates that Rule 30 restricts a party's ability to depose a party asserting a claim against it. Here, there is no dispute that each opt-in plaintiff is an additional party,[26] and thus, this is a case with 217 party plaintiffs. Accordingly, Rule 30 is not intended to restrict Defendant's ability to take depositions of the opt-in plaintiffs. *See* F.R.C.P. § 30.

Moreover, Plaintiff's reliance on *Marseet v. Rochester Institute of Technology* and *Parimal v. Manitex International, Inc.* is misplaced. *See* Dkt. 170 at 6; *see Marseet v. Rochester Institute of Technology*, No. 20-CV-7096FPG, 2023 WL 533288 (W.D.N.Y. Jan. 27, 2023); *see Parimal v. Manitex International, Inc.*, No. 3:19-CV-01910, 2021 WL 1976311 (D. Conn. May 18, 2021). *Marseet* and *Parimal* are single-plaintiff cases where the individual plaintiff requested more than 10 non-party depositions. *See Marseet*, No. 20-CV-7096FPG, 2023 WL 533288; *see Parimal*, No. 3:19-CV-01910, 2021 WL 1976311.

---

[26] In an FLSA collective action, "every plaintiff who opts in to a collective action has party status." *Pettenato v. Beacon Health Options, Inc.*, 425 F. Supp. 3d 264, 279 (S.D.N.Y. 2019) (quoting 7B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1807 (3ded. 2004)); *see also* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); *Prickett v. DeKalb Cty.,* 349 F.3d 1294, 1297 (11th Cir. 2003) ("by referring to them as 'party plaintiff[s]' Congress indicated that opt-in plaintiffs should have the same status in relation to the claims of the lawsuit as do the named plaintiffs"); *see also Bethel v. BlueMercury, Inc.*, No. 21 Civ. 2743, 2022 WL 3594575, at *11 (S.D.N.Y. Aug. 22, 2022) ("Most critically, in FLSA collective actions, opt-in plaintiffs are deemed to be 'parties to the action as soon as they file consent forms.'"); *see also Marichal v. Attending Home Care Services, LLC*, 432 F. Supp. 3d 271, 278 (E.D.N.Y. 2020) ("'[E]very plaintiff who opts in to a collective action has *party status* . . . [and] each FLSA claimant has the right to be present in court to advance his or her own claim.'") (citations omitted).

Accordingly, the holdings in *Marseet* and *Parimal* are inapplicable to the instant matter where multiple plaintiff depositions are being sought in a multi-plaintiff litigation.

Finally, Plaintiff's reliance on Rule 30 is further misplaced as the dispute over the proper number of opt-in plaintiff deponents is currently before the Court in the instant motion. Dkt. 170 at 6. When implicated, Rule 30 only requires a party to obtain leave from the court to take additional depositions. F.R.C.P. § 30. Presumably, the Court will issue an order in this matter setting the number of opt-in plaintiff depositions permitted and thus, the Court's order will inherently grant Defendant leave to take more than ten depositions at the time it is issued. As the pending discovery dispute will be resolved by a court order, Rule 30 does not create a basis to preclude opt-in plaintiff depositions.

Plaintiff's remaining positions are nonsensical. Dkt. 170 at 6-7. Plaintiff acknowledges that "Ellis must show that there are disparate factual and employment settings and individualized defenses to decertify this matter." *Id.* at *6*. However, Defendant cannot do this without discovery. Plaintiff contends that Defendant somehow can do this *before* discovery, but that is nonsensical.[27] As noted in *Ruggles*, Defendant must be permitted to conduct enough discovery to support a motion to decertify the conditionally certified class. *See Ruggles*, No. 1:08-cv-201, 2010 WL 11574166, at *3. Defendant will only be able to meet this standard if it is permitted to explore the claims of opt-ins from each position, department and location represented within the collective.

---

[27] Plaintiff also contends that the court supposedly already found that plaintiffs were similarly situated, so that minimal further discovery is necessary. This is ludicrous and presupposes an outcome which has not yet been determined. The court merely found that the plaintiffs were similarly situated enough to meet the minimal or low burden to send notice to them; that is all.

Moreover, Plaintiff's reliance on *Chipotle* to establish that Defendant is already in possession of all the relevant information, is inapposite. Dkt. 170 at 6; *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 188, 190-92 (S.D.N.Y. 2014). In *Chipotle*, the plaintiff asserted an exemption misclassification claim, specifically litigating over whether apprentices were properly classified as exempt. *Chipotle*, 300 F.R.D. 188, 190-92. In *Chipotle*, the Plaintiff's relied on apprentice's job duties which were well within the knowledge of company. *See id.* However, here, the opt-in plaintiffs' claim that particular employees were told by particular supervisors to report early or to leave late or were unable to take lunch on particular days. These claims are specific to each individual, with significant differences between positions, departments and locations. Contrary to Plaintiff's argument, job duties and supervision change across job title, department and location. Additionally, the demand placed upon employees varies drastically across departments and locations. In fact, the testimony already obtained in this matter has shown that the demand placed on an employees' time and attention varies drastically across departments. *See* Dkt. 116. Additionally, the history of this case as detailed above has clearly shown that the experiences of employees have been all over the map, with some employees testifying they did not work unpaid time before or after shift, others recanting previous claims, and still others refusing to show up to their scheduled deposition. It is thus plain that evidence of what each individual opt-in plaintiff experiences can *only* be obtained through their depositions. And even with that, Defendant is not seeking to depose each opt-in plaintiff, but one representative from each job description in each department. Defendant needs this information so it will have enough discovery to

support a motion to decertify the conditionally certified class. *See Ruggles*, No. 1:08-cv-201, 2010 WL 11574166, at *3.

### B. *Ellis's Proposal is Reasonable and Does Not Impose an Undue Burden*

Plaintiff asserts that the scope of depositions requested by Ellis is overbroad and overly burdensome. However, Plaintiff neglects to acknowledge that it was her structuring of the collective that renders this information necessary. There is a single named plaintiff, Denise Davella, in this matter. Dkt. 25. She is a nurse that worked in the cardiac catheter lab in Ellis Hospital. *Id.* Davella had no applicable experiences to any other position, department or location. Accordingly, Plaintiff could have narrowly tailored the collective definition as Registered Nurses which work in Ellis Hospital's cardiac catheter lab. However, Plaintiff <u>chose</u> to broaden the collective definition as widely as possible and include not just nurses, but all patient care workers; not just employees in Ellis's cardiac catheter lab, but all patient care workers in all departments at Ellis Hospital; and not just patient care workers at Ellis Hospital, but at any Ellis location.

Plaintiff argues that Ellis's proposed discovery is burdensome on the sole basis of Plaintiff's counsel's anticipated time needed to produce discovery responses and prepare for and attend depositions, and the high costs associated with these activities due to Plaintiff's counsel's bloated billing rates. *See* Dkt. 170 at 3-5. Plaintiff could have selected local attorneys who typically bill between $200 and $400 an hour. However, Plaintiff decided to select attorneys located in California and Tennessee who bill up to $1295 an hour, a billing rate significantly higher than the normal and customary billing rates in this District. Ellis should not be forced to jeopardize its ability to obtain the necessary discovery to support a motion to decertify the conditionally certified collective and properly

defend itself in this matter simply because the discovery will result in the accumulation of attorney's fees which Plaintiff and the opt-in plaintiffs may not bear the burden of paying.[28] As such, to the extent that any burden exists here, it is mitigated by the FLSA's fee-shifting provision and as a result, unless Ellis prevails, Ellis will ultimately bear some the cost of any burden created by the proposed discovery, as determined by the Court. *See Lloyd*, No. 11 Civ. 9305, 2015 WL 1283681, at *4. Accordingly, contrary to Plaintiff's position, there is no burden present in this matter which should preclude Ellis's proposed discovery.

Despite Plaintiff's clear benefit from increased attorney's fees, as outlined by Plaintiff's counsel, without any burden imposed upon Plaintiff and the opt-in plaintiffs, Plaintiff continues to argue that Ellis's proposal to depose one representative individual from each job title at each location/department is too expansive. Plaintiff's position is ridiculous.  As Magistrate Judge Treece held in *Ruggles*, a collective of this size is "not particularly large" and individual discovery responses and a representative sample of depositions are warranted. *See Ruggles*, No. 1:08-cv-201, 2010 WL 11574166, at *3-5 (permitting defendant to proceed with individualized written discovery from all 297 opt-ins and take the depositions of 25% of the total collective).

---

[28] Plaintiff's reliance on this argument is nonsensical. If Plaintiff and the opt-in plaintiffs ultimately prevail on their claims against Ellis, fee-shifting will occur, and Plaintiff's counsel will collect the fees incurred through discovery from Ellis. If they do not prevail on their claims, or Plaintiff's counsel collects less than their standard rate, that outcome is the result of a business decision that counsel for plaintiff made willingly and voluntarily. In either scenario, the hefty attorney's fees that Plaintiff's counsel basis his argument on will not be recovered from Plaintiff or the opt-in plaintiffs. Accordingly, contrary to Plaintiff's position, the hefty projected attorney's fees will not create any burden upon Plaintiff or the opt-in plaintiffs.

Likewise, in *Frisbie v. Feast American Diners*, the court held that individualized discovery was appropriate given the small size of the collective and the inquiry of whether Plaintiffs are similarly situated. *Frisbie v. Feast American Diners*, No. 17-CV-6270, 2020 WL 2305083, at * 3 (W.D.N.Y. May 8, 2020). The court in *Frisbie* further held that bare bones assertions that the burden associated with the depositions exceeds their benefit and that Defendants had superior access to much of the information were insufficient to preclude individualized discovery. *Id.* Similar to *Frisbie*, Plaintiff has failed to set forth anything more than bare bones assertions that the burden associated with the depositions exceeds the benefit and has access to information from a "captive audience." Dkt. 170 at 3-5. However, Plaintiff's attempts to establish a burden have failed, and thus, like *Frisbie*, Ellis should be permitted to depose one opt-in plaintiff from each department and location represented in the collective. *See id.* (permitting defendant to depose one opt-in plaintiff from each of the different restaurant locations).

Similarly, in *Lloyd*, the court concluded that there was no showing that individualized discovery would be so inefficient or overly burdensome to justify a representative sampling. *See Lloyd v. J.P. Morgan Chase & Co.*, No. 11 Civ. 9305, 2015 WL 1283681, at *4.[29] Accordingly, the court permitted defendants to seek written

---

[29] In *Lloyd*, the court noted that "[a]lthough there is far from a 'bright line' test as to the number of opt-in plaintiffs which tips the balance in favor of representative sampling as opposed to individualized discovery, it appears that when the number of opt-in plaintiffs is approaching 200, courts are more inclined to order a representative sampling." *See Lloyd v. J.P. Morgan Chase & Co.*, No. 11 Civ. 9305, 2015 WL 1283681, at *3. However, in a case where the collective barely exceeds 200, such as here, the application of a representative sampling may be overly harsh. Indeed, if the collective in this matter contained only 20 or 30 fewer employees, individualized discovery would be the typical standard, resulting in the depositions of almost 200 plaintiffs. However, it is illogical for the same 20 or 30 additional opt-ins to result in a representative sample that limits the deponents down to a handful. The disparity between these two outcomes when over a

discovery from all of the 100 opt-ins that were not subject to an arbitration agreement and ordered the depositions of 20% of the opt-ins. *Id.* Finally, in *Elliott v. Schlumberger Technology Corp.*, the court held that given the plaintiff's assertions, a sampling sufficient for depositions of several employees in each division was reasonable, allowing defendant to depose up to twenty percent of total number of plaintiffs who were employed in each of its divisions. *Elliot v. Schlumberger Technology Corp.*, No. 3:13-cv-79, 2015 WL 13740759 (D. N.D. June 10, 2015).

Accordingly, similar to *Ruggles*, *Frisbie*, *Lloyd*, and *Elliot*, Plaintiff has failed to establish a burden associated with the proposed depositions which exceeds the derived benefit, nor has Plaintiff shown that individualized discovery would be so inefficient or overly burdensome to justify the need for a representative sampling. As such, Ellis's proposed discovery does not create an excessive burden and is thus reasonable.

### C.  *Depositions of the Opt-In Plaintiffs Should Be Held in Person*

Plaintiff has requested that all depositions be conducted remotely. Dkt. 170 at 7-8. To justify this request, Plaintiff asserts that the travel by opt-in plaintiffs and counsel to Defendant's counsel's law firm would constitute "a significant waste of time and money." *Id.* However, Plaintiff's argument misconstrues the burden that this will place on the opt-in plaintiffs. Defendant's counsel's law firm is only a short drive from Ellis Hospital and Defendant's other locations. Presumably, this is also a short drive from the opt-in plaintiffs' homes. Accordingly, any travel to Defendant's counsel's office is a *de minimis* burden. Similarly, counsel's argument that the opt-in plaintiffs will be required to request valuable

---

minimal difference in total opt-ins is too stark. Accordingly, while Ellis agrees with the usage of a representative sampling, providing depositions for only 10% of the 217 opt-ins is not appropriate.

time off to attend the deposition is inapposite as this would be true regardless of the location of the deposition.

Moreover, Plaintiff's reliance on the cited case law is misplaced. In *Angamarca v Da Ciro, Inc.*, the court analyzed whether a plaintiff that was located in Ecuador and unauthorized to return to the United States could have their deposition taken remotely. *Angamarca v Da Ciro, Inc.*, 303 F.R.D. 445, 446 (S.D.N.Y. 2014). Likewise, in *Gee v. SunTrust Mortg., Inc.*, the court analyzed whether the depositions of twenty-five opt-in plaintiffs which live in twenty-five different cities across the country can be conducted remotely. *Gee v. SunTrust Mortg., Inc.*, No. 10-CV-01509, 2011 WL 5597124, at *1 (N.D. Cal. Nov. 15, 2011). Similarly, in *Brasfield*, the opt-in plaintiffs in question were out-of-state opt-in plaintiffs that reside "far away from Memphis" the forum for the action. *See Brasfield v. Source Broadband Servs., LLC*, 255 F.R.D. 447, 450 (W.D. Tenn. 2008). However, there are no out-of-state opt-in plaintiffs in this matter. Similarly, unlike *Brasfield*, the opt-in plaintiffs chose the forum, and the Northern District of New York is the home forum for each of the opt-in plaintiffs. Accordingly, *Brasfield Angamarca* and *Gee* are inapplicable to this matter.

With regard to the alleged burden derived from Plaintiff's counsel's out-of-state travel, Ellis should not be prohibited from deposing the opt-in plaintiff's in-person simply because Plaintiff chose to hire attorneys that are located in Memphis, Tennessee and Emeryville, California. Plaintiff could have chosen local attorneys to represent them in this matter, however, they elected not to. Plaintiff and the other 216 opt-in plaintiffs are located in the Capital District of New York. Ellis is located in the Capital District of New York and counsel for Ellis is located in the Capital District of New York. Additionally, the forum for

this action is the Northern District of New York. All of the pertinent facts and all of the necessary participants, with the exception of Plaintiff's counsel, are located in the Capital District of New York.

As former Magistrate Judge Andrew Baxter correctly held on October 7, 2021, there is no basis for depositions to be conducted remotely. Dkt. 58, Ex. 1 at 54-55. While Magistrate Judge Baxter considered Plaintiff's counsel's concerns over COVID, he rejected Plaintiff's request for remote depositions and concerns regarding COVID are inapplicable to the instant motion. *Id.* In doing so, Magistrate Judge Baxter held that Plaintiff "was a plaintiff in a lawsuit and that requires certain inconveniences, and showing up for a deposition is one of them." Dkt. 58, Ex 1 at 54-55. The same remains true today. Further, on May 17, 2022, Magistrate Judge Baxter similarly ordered that the depositions of opt-in plaintiffs be held in-person in the Capital District of New York. Dkt. 99 at 18. Accordingly, as Magistrate Judge Baxter has previously done, Plaintiff's request for remote depositions should be rejected and Ellis should be permitted to take the depositions of the opt-ins in person in the Capital District of New York.

   D. *Any Deponent That Fails to Appear Should be Dismissed.*

Plaintiff also requests that in the event that an opt-in plaintiff fails to answer discovery demands or attend a deposition, the opt-in plaintiff should be replaced by another opt-in plaintiff without the dismissal of their claim. Dkt. 170 at 8. Ellis concurs with Plaintiff's position that an opt-in plaintiff that has been designated to be deposed but does not participate in a deposition, should be replaced by another opt-in plaintiff to be deposed. However, Plaintiff's position that the non-participating opt-in plaintiff should not be dismissed is inapposite.

Plaintiff's request that the Court not dismiss the claim of any collective member that is unable to answer discovery or attend a deposition" will permit the collective opt-ins with the ability to disregard Ellis's interrogatories and discovery demands and any order of this Court with impunity. Dkt. 170 at 8. Each collective opt-in has elected to join this action and as such, has availed themselves to the litigation process. In fact, Plaintiff has acknowledged that an opt-in plaintiff is required to participate in discovery in the Notice of Collective Action Lawsuit provided to Ellis's employees which instructed employees that "[i]f you join this lawsuit, you may be asked to give testimony and information about your work for Ellis, to help the Court decide whether you are owed any money." Dkt. 147, Ex. 1. Accordingly, by submitting their consent to join this action, each and every opt-in plaintiff has accepted that they may have to participate in discovery, including providing information or testimony. Indeed, permitting an opt-in plaintiff to assert an FLSA claim while not participating in discovery will deprive Ellis of the ability to set forth a defense in this matter.

Moreover, Plaintiff has provided no justification for their request to keep an opt-in plaintiff that fails to participate in discovery. While Plaintiff cites to *Scott v. Chipotle Mexican Grill, Inc.* to establish her position, *Scott* does not hold that an opt-in plaintiff's claim should not be dismissed for the failure to respond to discovery demands or appear for a deposition. *See Chipotle*, 300 F.R.D. at 193. Rather, *Scott* merely holds that a defendant is permitted to receive discovery from a replacement opt-in plaintiff when a randomly selected opt-in fails to respond to written discovery. *See id.* However, Courts in this District have dismissed the claims of plaintiffs that have failed to appear for depositions or respond to discovery demands. *See e.g.*, *Anderson v. Naughton*, No. 9:08-

CV-176, 2010 WL 2070679, at *1 (N.D.N.Y. May 21, 2010); *see also Morse v. Alpine Access, Inc.*, No. 5:17-CV-0235, 2017 WL 5186464 (N.D.N.Y. Nov. 8, 2017). The same should be done here. As such, Plaintiff's request should be rejected, and the claim asserted by any opt-in plaintiff that fails to participate in discovery should be dismissed.

## **CONCLUSION**

For these reasons, Defendant Ellis respectfully requests that Your Honor issue an Order: (1) permitting 10 interrogatories and 10 document requests to be served on every opt-in plaintiff; (2) permitting depositions from a representative sample of the collective, to include one deposition from each of the departments and locations which contain an opt-in for a total of 44 depositions; (3) limiting the duration of such depositions to be 4 hours in length; (4) requiring depositions to be conducted in-person in or near Albany, New York; and (5) requiring that any collective member that does not answer discovery or attend a deposition have their claim dismissed and if selected for a deposition, a replacement be made, along with such relief the Court deems just and proper.

Dated: August 23, 2024

BOND, SCHOENECK & KING, PLLC

By: _____

Michael D. Billok
Bar Roll No. 516448
Eric M. O'Bryan
Bar Roll No. 700745
*Attorneys for Defendant*
Bond, Schoeneck & King, PLLC
268 Broadway, Suite 104
Saratoga Springs, New York 12866
Telephone: (518) 533-3236
Facsimile: (518) 533-3299
Email: mbillok@bsk.com